(Slip Opinion)          OCTOBER  TERM,  2005                    1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## DAY *v.* McDONOUGH, INTERIM SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 04–1324.  Argued February 27, 2006—Decided April 25, 2006

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) sets a one-year limitation period for filing a state prisoner's federal habeas corpus petition, running from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U. S. C. §2244(d)(1)(A), but stops the one-year clock while the petitioner's "properly filed" application for state postconviction relief "is pending," §2244(d)(2). Under Eleventh Circuit precedent, which is not challenged here, that tolling period does not include the 90 days in which a petitioner might have sought certiorari review in this Court challenging state-court denial of postconviction relief.

Petitioner Day's Florida trial-court sentence was affirmed on December 21, 1999, and his time to seek this Court's review of the final state-court decision expired on March 20, 2000. Day unsuccessfully sought state postconviction relief 353 days later. The trial court's judgment was affirmed on appeal, effective December 3, 2002. Day petitioned for federal habeas relief 36 days later, on January 8, 2003. Florida's answer asserted that the petition was "timely" because it was filed after 352 days of untolled time. Inspecting the answer and attachments, however, a Federal Magistrate Judge determined that the State had miscalculated the tolling time: Under the controlling Eleventh Circuit precedent, the untolled time was actually 388 days, rendering the petition untimely. After affording Day an opportunity to show cause why the petition should not be dismissed for failure to meet AEDPA's one-year deadline, the Magistrate Judge found petitioner's responses inadequate and recommended dismissal. The District Court adopted the recommendation, and the Eleventh Circuit af-

firmed, concluding that a State's patently erroneous concession of timeliness does not compromise a district court's authority *sua sponte* to dismiss a habeas petition as untimely.

*Held:* In the circumstances here presented, the District Court had discretion to correct the State's erroneous computation and, accordingly, to dismiss the habeas petition as untimely under AEDPA's one-year limitation. Pp. 2–11.

  (a) A statute of limitations defense is not jurisdictional, therefore courts are under no obligation to raise the matter *sua sponte*. Cf. *Kontrick* v. *Ryan*, 540 U. S. 443, 458. As a general matter, a defendant forfeits a statute of limitations defense not asserted in its answer or in an amendment thereto. See Federal Rules of Civil Procedure 8(c), 12(b), and 15(a) (made applicable to federal habeas proceedings by Rule 11 of the Rules governing such proceedings). And the Court would count it an abuse of discretion to override a State's deliberate waiver of the limitations defense. But, in appropriate circumstances, a district court may raise a time bar on its own initiative. The District Court in this case confronted no intelligent waiver on the State's part, only an evident miscalculation of time. In this situation the Court declines to adopt either an inflexible rule requiring dismissal whenever AEDPA's one-year clock has run, or, at the opposite extreme, a rule treating the State's failure initially to plead the one-year bar as an absolute waiver. Rather, the Court holds that a district court has discretion to decide whether the administration of justice is better served by dismissing the case on statute of limitations grounds or by reaching the merits of the petition. This resolution aligns the statute of limitations with other affirmative defenses to habeas petitions, notably exhaustion of state remedies, procedural default, and nonretroactivity. In *Granberry* v. *Greer,* 481 U. S. 129, 133, this Court held that federal appellate courts have discretion to consider a state prisoner's failure to exhaust available state remedies before invoking federal habeas jurisdiction despite the State's failure to interpose the exhaustion defense at the district-court level. Similarly, in *Caspari* v. *Bohlen*, 510 U. S. 383, 389, the Court held that "a federal court may, but need not, decline to apply [the nonretroactivity rule announced in *Teague* v. *Lane*, 489 U. S. 288, 310,] if the State does not argue it." It would make scant sense to distinguish AEDPA's time bar from these other threshold constraints on federal habeas petitioners. While a district court is not required to double-check the State's math, cf. *Pliler* v. *Ford,* 542 U. S. 225, 231, no Rule, statute, or constitutional provision commands a judge who detects a clear computation error to suppress that knowledge. Cf. Fed. Rule Civ. Proc. 60(a). The Court notes particularly that the Magistrate Judge, instead of acting *sua sponte*, might have informed the State of its obvious computation error and

Syllabus

entertained an amendment to the State's answer. See, *e.g.,* Fed. Rule Civ. Proc. 15(a). There is no dispositive difference between that route, and the one taken here. Pp. 2–10.

(b) Before acting *sua sponte*, a court must accord the parties fair notice and an opportunity to present their positions. It must also assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and "determine whether the interests of justice would be better served" by addressing the merits or by dismissing the petition as time barred. See *Granberry,* 481 U. S., at 136. Here, the Magistrate Judge gave Day due notice and a fair opportunity to show why the limitation period should not yield dismissal. The notice issued some nine months after the State's answer. No court proceedings or action occurred in the interim, and nothing suggests that the State "strategically" withheld the defense or chose to relinquish it. From all that appears in the record, there was merely an inadvertent error, a miscalculation that was plain under Circuit precedent, and no abuse of discretion in following *Granberry* and *Caspari.* P. 11.

391 F. 3d 1192, affirmed.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, SOUTER, and ALITO, JJ., joined. STEVENS, J., filed an opinion dissenting from the judgment, in which BREYER, J., joined. SCALIA, J., filed a dissenting opinion, in which THOMAS and BREYER, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———

No. 04–1324

———

## PATRICK DAY, PETITIONER *v.* JAMES R. McDONOUGH, INTERIM SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[April 25, 2006]

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the authority of a U. S. District Court, on its own initiative, to dismiss as untimely a state prisoner's petition for a writ of habeas corpus. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, sets a one-year limitation period for filing such petitions, running from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U. S. C. §2244(d)(1)(A). The one-year clock is stopped, however, during the time the petitioner's "properly filed" application for state postconviction relief "is pending." §2244(d)(2). Under Eleventh Circuit precedent, that tolling period does not include the 90 days in which a petitioner might have sought certiorari review in this Court challenging state-court denial of postconviction relief. *Coates* v. *Byrd*, 211 F. 3d 1225, 1227 (2000).

In the case before us, the State's answer to the federal habeas petition "agree[d] the petition [was] timely" be-

cause it was "filed after 352 days of untolled time." App. 24. Inspecting the pleadings and attachments, a Federal Magistrate Judge determined that the State had miscalculated the tolling time. Under Circuit precedent, the untolled time was 388 days, rendering the petition untimely by some three weeks. After affording the petitioner an opportunity to show cause why the petition should not be dismissed for failure to meet the statutory deadline, and finding petitioner's responses inadequate, the Magistrate Judge recommended dismissal of the petition. The District Court adopted the Magistrate Judge's recommendation, and the Court of Appeals affirmed, concluding that "[a] concession of timeliness by the state that is patently erroneous does not compromise the authority of a district court *sua sponte* to dismiss a habeas petition as untimely, under AEDPA." *Day* v. *Crosby,* 391 F. 3d 1192, 1195 (CA11 2004).

The question presented is whether a federal court lacks authority, on its own initiative, to dismiss a habeas petition as untimely, once the State has answered the petition without contesting its timeliness. Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto. Fed. Rules Civ. Proc. 8(c), 12(b), and 15(a). And we would count it an abuse of discretion to override a State's deliberate waiver of a limitations defense. In this case, however, the federal court confronted no intelligent waiver on the State's part, only an evident miscalculation of the elapsed time under a statute designed to impose a tight time constraint on federal habeas petitioners.[1] In

————————

[1] Until AEDPA took effect in 1996, no statute of limitations applied to habeas petitions. See *Mayle* v. *Felix,* 545 U. S. ___, ___ (2005) (slip op., at 7). Courts invoked the doctrine of "prejudicial delay" to screen out unreasonably late filings. See generally 2 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure §24 (4th ed. 2001). In AEDPA, Congress prescribed a uniform rule: "A 1-year period of limita-

the circumstances here presented, we hold, the federal court had discretion to correct the State's error and, accordingly, to dismiss the petition as untimely under AEDPA's one-year limitation.

I

Petitioner Patrick A. Day was convicted of second-degree murder and sentenced to 55 years in prison by a Florida trial court. Day unsuccessfully appealed the sentence, which was affirmed on December 21, 1999. Day did not seek this Court's review of the final state-court decision; his time to do so expired on March 20, 2000.

Three hundred and fifty-three (353) days later, Day unsuccessfully sought state postconviction relief. The Florida trial court's judgment denying relief was affirmed on appeal, and the appellate court issued its mandate on December 3, 2002. See *Nyland* v. *Moore*, 216 F. 3d 1264, 1267 (CA11 2000) (under Florida law, appellate order "is pending" until the mandate issues). Thirty-six (36) days thereafter, on January 8, 2003, Day petitioned for federal habeas relief asserting several claims of ineffective assistance of trial counsel. A Magistrate Judge, finding the petition "in proper form," App. 21, ordered the State to file an answer, *id.,* at 21–22. In its responsive pleading, the State failed to raise AEDPA's one-year limitation as a defense. See *supra*, at 2. Overlooking controlling Eleventh Circuit precedent, see *Coates*, 211 F. 3d, at 1227, the State calculated that the petition had been "filed after 352 days of untolled time," and was therefore "timely." App. 24. The State's answer and attachments, however, revealed that, had the State followed the Eleventh Circuit's instruction on computation of elapsed time, the timeliness concession would not have been made: Under the Circuit's

———————

tion shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U. S. C. §2244(d)(1).

precedent, more than one year, specifically, 388 days of untolled time, had passed between the finality of Day's state-court conviction and the filing of his federal habeas petition.[2]

A newly assigned Magistrate Judge noticed the State's computation error and ordered Day to show cause why his federal habeas petition should not be dismissed as untimely. *Id.,* at 26–30. Determining that Day's responses did not overcome the time bar, the Magistrate Judge recommended dismissal of the petition, App. to Pet. for Cert. 8a–15a, and the District Court adopted that recommendation, *id.,* at 7a.

The Eleventh Circuit granted Day a certificate of appealability on the question "[w]hether the district court erred in addressing the timeliness of [Day's] habeas corpus petition . . . after the [State] had conceded that [the] petition was timely." App. 37. In a decision rendered two years earlier, *Jackson* v. *Secretary for Dept. of Corrections*, 292 F. 3d 1347 (2002), the Eleventh Circuit had ruled that, "even though the statute of limitations is an affirmative defense, the district court may review *sua sponte* the timeliness of [a federal habeas] petition." *Id.*, at 1349. Adhering to *Jackson*, and satisfied that the State's conces-

---

[2] Day urges this Court to find his petition timely. He asserts that the Eleventh Circuit misinterpreted §2244(d)(2) in holding that AEDPA's time limitation was not tolled during the 90-day period he could have petitioned this Court to review the denial of his motion for state postconviction relief. See Brief for Petitioner 45–50. This question was not "set out in the petition [for certiorari], or fairly included therein," and we therefore do not consider it here. This Court's Rule 14.1(a). We note, however, that the Court recently granted certiorari in *Lawrence* v. *Florida*, No. 05–8820 (cert. granted, Mar. 27, 2006), which presents the question whether AEDPA's time limitation is tolled during the pendency of a petition for certiorari from a judgment denying state postconviction relief. The instant opinion, we emphasize, addresses only the authority of the District Court to raise AEDPA's time bar, not the correctness of its decision that the limitation period had run.

sion of timeliness "was patently erroneous," the Eleventh Circuit affirmed the dismissal of Day's petition. 391 F. 3d, at 1192–1195.[3]

We granted certiorari *sub nom. Day* v. *Crosby*, 545 U. S. \_\_ (2005), in view of the division among the Circuits on the question whether a district court may dismiss a federal habeas petition as untimely under AEDPA, despite the State's failure to raise the one-year limitation in its answer to the petition or its erroneous concession of the timeliness issue. Compare, *e.g., Long* v. *Wilson*, 393 F. 3d 390, 401–404 (CA3 2004), and 391 F. 3d, at 1194–1195 (case below), with *Scott* v. *Collins*, 286 F. 3d 923, 930–931 (CA6 2002), and *Nardi* v. *Stewart*, 354 F. 3d 1134, 1141–1142 (CA9 2004).

## II

A statute of limitations defense, the State acknowledges, is not "jurisdictional," hence courts are under no *obligation* to raise the time bar *sua sponte*. See, *e.g.*, *Acosta* v. *Artuz*, 221 F. 3d 117, 122 (CA2 2000); *Hill* v. *Braxton*, 277 F. 3d 701, 705 (CA4 2002); *Davis* v. *Johnson*, 158 F. 3d 806, 810

---

[3] Day reads the Eleventh Circuit's opinion in this case as rendering mandatory a district court's *sua sponte* application of AEDPA's one-year limitation, even when the respondent elects to waive the limitation and oppose the petition solely on the merits. See Tr. of Oral Arg. 6–8. He points to a sentence in the Eleventh Circuit's brief *per curiam* opinion stating: "A federal court that sits in collateral review of a criminal judgment of a state court has an obligation to enforce the federal statute of limitations." 391 F. 3d, at 1194. We read the Eleventh Circuit's summary disposition in line with that court's description of its controlling precedent: "We . . . ruled that, 'even though the statute of limitations is an affirmative defense, the district court *may* review *sua sponte* the timeliness of [a federal habeas] petition.'" *Ibid.* (referring to *Jackson* v. *Secretary for Dept. of Corrections*, 292 F. 3d, at 1349 (emphasis added)); see also 391 F. 3d, at 1195 (State's "patently erroneous" concession of timeliness "does not compromise *the authority* of a district court *sua sponte* to dismiss a habeas petition as untimely" under AEDPA's one-year limitation (emphasis added)).

(CA5 1998); cf. *Kontrick* v. *Ryan*, 540 U. S. 443, 458 (2004) (defendant forfeited untimeliness argument "by failing to raise the issue until after [the] complaint was adjudicated on the merits"). In this respect, the limitations defense resembles other threshold barriers—exhaustion of state remedies, procedural default, nonretroactivity—courts have typed "nonjurisdictional," although recognizing that those defenses "implicat[e] values beyond the concerns of the parties." *Acosta*, 221 F. 3d, at 123 ("The AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time.").

On the exhaustion of state remedies doctrine, requiring state prisoners, before invoking federal habeas jurisdiction, to pursue remedies available in state court, *Granberry* v. *Greer,* 481 U. S. 129 (1987), is the pathmarking case. We held in *Granberry* that federal appellate courts have discretion to consider the issue of exhaustion despite the State's failure to interpose the defense at the district-court level. *Id.,* at 133.[4] Later, in *Caspari* v. *Bohlen*, 510 U. S. 383, 389 (1994), we similarly held that "a federal court may, but need not, decline to apply [the nonretroactivity rule announced in *Teague* v. *Lane*, 489 U. S. 288, 310 (1989),] if the State does not argue it." See also *Schiro* v. *Farley*, 510 U. S. 222, 229 (1994) (declining to address nonretroactivity defense that State raised only in Supreme Court merits brief, "[a]lthough we undoubtedly have the discretion to reach" the argument).

While the issue remains open in this Court, see *Trest* v.

---

[4] In AEDPA, enacted nearly a decade after *Granberry*, Congress expressly provided that "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U. S. C. §2254(b)(3).

*Cain*, 522 U. S. 87, 90 (1997),[5] the Courts of Appeals have unanimously held that, in appropriate circumstances, courts, on their own initiative, may raise a petitioner's procedural default, *i.e.*, a petitioner's failure properly to present an alleged constitutional error in state court, and the consequent adequacy and independence of state-law grounds for the state-court judgment. See *Brewer* v. *Marshall*, 119 F. 3d 993, 999 (CA1 1997); *Rosario* v. *United States*, 164 F. 3d 729, 732 (CA2 1998); *Sweger* v. *Chesney*, 294 F. 3d 506, 520 (CA3 2002); *Yeatts* v. *Angelone*, 166 F. 3d 255, 261 (CA4 1999); *Magouirk* v. *Phillips*, 144 F. 3d 348, 358 (CA5 1998); *Sowell* v. *Bradshaw*, 372 F. 3d 821, 830 (CA6 2004); *Kurzawa* v. *Jordan*, 146 F. 3d 435, 440 (CA7 1998); *King* v. *Kemna*, 266 F. 3d 816, 822 (CA8 2001) (en banc); *Vang* v. *Nevada*, 329 F. 3d 1069, 1073 (CA9 2003); *United States* v. *Wiseman*, 297 F. 3d 975, 979 (CA10 2002); *Moon* v. *Head*, 285 F. 3d 1301, 1315, n. 17 (CA11 2002).

Petitioner Day relies heavily on Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules), *i.e.*, the procedural Rules governing federal habeas petitions from state prisoners, in urging that AEDPA's limitation may be raised by a federal court *sua sponte* only at the preanswer, initial screening stage. Habeas Rule 4 provides that district courts "must promptly examine" state prisoner habeas petitions and must dismiss the petition "[i]f it plainly appears . . . that the petitioner is not entitled to relief." Once an answer has been ordered and filed, Day maintains, the court loses authority to rule the petition untimely *sua sponte*.[6] At

---

[5] *Trest* held that a Court of Appeals was not obliged to raise procedural default on its own initiative, but declined to decide whether courts have discretion to do so. 522 U. S., at 89.

[6] Were we to accept Day's position, courts would never (or, at least, hardly ever) be positioned to raise AEDPA's time bar *sua sponte*. As this Court recognized in *Pliler* v. *Ford,* 542 U. S. 225, 232 (2004), infor-

that point, according to Day, the Federal Rules of Civil Procedure hold sway. See Habeas Rule 11 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.").[7] Under the Civil Procedure Rules, a defendant forfeits a statute of limitations defense, see Fed. Rule Civ. Proc. 8(c), not asserted in its answer, see Rule 12(b), or an amendment thereto, see Rule 15(a).

The State, on the other hand, points out that the statute of limitations is akin to other affirmative defenses to habeas petitions, notably exhaustion of state remedies, procedural default, and nonretroactivity. Indeed, the statute of limitations is explicitly aligned with those other defenses under the current version of Habeas Rule 5(b), which provides that the State's answer to a habeas petition "must state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations." The considerations of comity, finality, and the expeditious handling of habeas proceedings that motivated AEDPA,[8] the State maintains, counsel against an excessively rigid or formal approach to the affirmative defenses now listed in Habeas Rule 5. Citing *Granberry*, 481 U. S., at 131–134, as the instructive case, the State urges express recognition of an "intermediate approach." Brief for Respon-

————————

mation essential to the time calculation is often absent—as it was in this case—until the State has filed, along with its answer, copies of documents from the state-court proceedings.

[7] The Habeas Rules were amended after the proceedings below. We cite the current version because both parties agree that the amendments to Rules 4 and 11, effective December 1, 2004, wrought no relevant substantive change.

[8] See *Rhines* v. *Weber,* 544 U. S. 269, 276 (2005) (AEDPA's time bar "quite plainly serves the well-recognized interest in the finality of state court judgments"; it "reduces the potential for delay on the road to finality[.]" (quoting *Duncan* v. *Walker,* 533 U. S. 167, 179 (2001))).

dent 14 (internal quotation marks omitted); see also *id.,* at 25. In lieu of an inflexible rule requiring dismissal whenever AEDPA's one-year clock has run, or, at the opposite extreme, a rule treating the State's failure initially to plead the one-year bar as an absolute waiver, the State reads the statutes, Rules, and decisions in point to permit the "exercise [of] discretion in each case to decide whether the administration of justice is better served by dismissing the case on statute of limitations grounds or by reaching the merits of the petition." *Id.*, at 14. Employing that "intermediate approach" in this particular case, the State argues, the petition should not be deemed timely simply because a government attorney calculated the days in between petitions incorrectly.

We agree, noting particularly that the Magistrate Judge, instead of acting *sua sponte*, might have informed the State of its obvious computation error and entertained an amendment to the State's answer. See Fed. Rule Civ. Proc. 15(a) (leave to amend "shall be freely given when justice so requires"); see also 28 U. S. C. §2243 (State's response to habeas petition may be amended by leave of court); cf. *Long*, 393 F. 3d, at 402–404 (District Court raised the statute of limitations *sua sponte*, the State agreed with that disposition, and the Court of Appeals treated that agreement as a constructive amendment to the State's answer). Recognizing that an amendment to the State's answer might have obviated this controversy,[9] we see no dispositive difference between that route, and the one taken here. See Brief for Respondent 24 ("Here, the State did not respond to the show cause order because its concession of timeliness was based on an erroneous calculation and it agreed the petition should be dismissed as untimely."); cf. *Slack* v. *McDaniel,* 529 U. S. 473, 487

_____

[9] The Court is unanimous on this point. See *post*, at 5, n. 2 (SCALIA, J., dissenting).

(2000) (admonishing against interpretation of procedural prescriptions in federal habeas cases to "trap the unwary *pro se* prisoner" (quoting *Rose* v. *Lundy,* 455 U. S. 509, 520 (1982))).

In sum, we hold that district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition. We so hold, noting that it would make scant sense to distinguish in this regard AEDPA's time bar from other threshold constraints on federal habeas petitioners. See *supra*, at 6–7; Habeas Rule 5(b) (placing "a statute of limitations" defense on a par with "failure to exhaust state remedies, a procedural bar, [and] non-retroactivity"); *Long*, 393 F. 3d, at 404 ("AEDPA's statute of limitations advances the same concerns as those advanced by the doctrines of exhaustion and procedural default, and must be treated the same."). We stress that a district court is not required to double-check the State's math. If, as this Court has held, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," *Pliler* v. *Ford,* 542 U. S. 225, 231 (2004),[10] then, by the same token, they surely have no obligation to assist attorneys representing the State. Nevertheless, if a judge does detect a clear computation error, no Rule, statute, or constitutional provision commands the judge to suppress that knowledge. Cf. Fed. Rule Civ. Proc. 60(a) (clerical errors in the record "arising from oversight or omission may be corrected by the court

---

[10] The procedural hindrance in *Pliler* was the petitioner's failure to exhaust state remedies. The Court in that case declined to rule on the propriety of the stay-and-abeyance procedure that would enable a habeas petitioner to remain in federal court while exhausting unexhausted claims in state court. 542 U. S., at 231. In a later decision, *Rhines,* 544 U. S., at 278–279, this Court held that a district court has discretion to stay a mixed petition (*i.e.*, one that includes both exhausted and unexhausted claims) to allow a habeas petitioner to present his unexhausted claims to the state court in the first instance, then return to federal court for review of his perfected petition.

at any time of its own initiative or on the motion of any party").

Of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions. See, *e.g., Acosta,* 221 F. 3d, at 124–125; *McMillan* v. *Jarvis*, 332 F. 3d 244, 250 (CA4 2003). Further, the court must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and "determine whether the interests of justice would be better served" by addressing the merits or by dismissing the petition as time barred. See *Granberry,* 481 U. S., at 136.[11] Here, the Magistrate Judge gave Day due notice and a fair opportunity to show why the limitation period should not yield dismissal of the petition. The notice issued some nine months after the State answered the petition. No court proceedings or action occurred in the interim, and nothing in the record suggests that the State "strategically" withheld the defense or chose to relinquish it. From all that appears in the record, there was merely an inadvertent error, a miscalculation that was plain under Circuit precedent, and no abuse of discretion in following this Court's lead in *Granberry* and *Caspari*, described *supra*, at 6–7.

\*    \*    \*

For the reasons stated, the judgment of the Court of Appeals is

*Affirmed.*

---

[11]A district court's discretion is confined within these limits. As earlier noted, should a State intelligently choose to waive a statute of limitations defense, a district court would not be at liberty to disregard that choice. See *supra*, at 2. But see *post*, at 7 (SCALIA, J., dissenting).

# SUPREME COURT OF THE UNITED STATES

———————

No. 04–1324

———————

## PATRICK DAY, PETITIONER *v.* JAMES R. MCDONOUGH, INTERIM SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[April 25, 2006]

JUSTICE STEVENS, with whom JUSTICE BREYER joins, dissenting from the judgment.

Although JUSTICE BREYER and I disagree on the proper answer to the question on which we granted certiorari—in my view, JUSTICE GINSBURG's opinion for the Court correctly decides that question, while JUSTICE BREYER has joined JUSTICE SCALIA's dissenting opinion—we agree on the proper disposition of this case. In our view, the Court should announce its opinion now, but it should postpone the entry of judgment pending our decision in *Lawrence* v. *Florida*, No. 05–8820 (cert. granted, Mar. 27, 2006). As JUSTICE GINSBURG notes, the question whether the Court of Appeals correctly concluded that Day's habeas corpus petition was barred by the statute of limitations will be answered by our decision in *Lawrence*. See *ante*, at 4, n. 2. It seems improvident to affirm a possibly erroneous Court of Appeals judgment that dismissed Day's habeas petition without an evaluation of its merits when we have already granted certiorari to address the issue on which the Court of Appeals may have erred. Of course, the Court of Appeals may avoid a miscarriage of justice by keeping this case on its docket until after we decide *Lawrence*, but it would be better practice for us to do so ourselves. Accord-

ingly, we respectfully dissent from the entry of the Court's judgment at this time.

# SUPREME COURT OF THE UNITED STATES

———————

No. 04–1324

———————

## PATRICK DAY, PETITIONER *v.* JAMES R. McDONOUGH, INTERIM SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[April 25, 2006]

JUSTICE SCALIA, with whom JUSTICE THOMAS and JUSTICE BREYER join, dissenting.

The Court today disregards the Federal Rules of Civil Procedure (Civil Rules) in habeas corpus cases, chiefly because it believes that this departure will make no difference. See *ante*, at 9. Even if that were true, which it is not, I could not join this novel presumption *against* applying the Civil Rules.

The Civil Rules "govern the procedure in the United States district courts in all suits of a civil nature." Rule 1. This includes "proceedings for . . . habeas corpus," Rule 81(a)(2), but only "to the extent that the practice in such proceedings is not set forth in statutes of the United States [or] the Rules Governing Section 2254 Cases [Habeas Rules]," Civil Rule 81(a)(2); see also Habeas Rule 11. Thus, "[t]he Federal Rules of Civil Procedure apply in the context of habeas suits to the extent that they are not inconsistent with the Habeas Corpus Rules," *Woodford* v. *Garceau*, 538 U. S. 202, 208 (2003), and do not contradict or undermine the provisions of the habeas corpus statute, *Gonzalez* v. *Crosby*, 545 U. S. \_\_\_, \_\_\_ (2005) (slip op., at 4–5).

As the Court notes, the Civil Rules adopt the traditional

forfeiture rule for unpleaded limitations defenses.  See
*ante*, at 8 (citing Rules 8(c), 12(b), 15(a)).  The Court does
not identify any "inconsisten[cy]" between this forfeiture
rule and the statute, Rules, or historical practice of habeas
proceedings—because there is none.  Forfeiture of the
limitations defense is demonstrably not inconsistent with
traditional habeas practice, because, as the Court ac-
knowledges, habeas practice included no statute of limita-
tions until 1996.  *Ante*, at 2, n. 1; see also *infra,* at 3–5.
Forfeiture is perfectly consistent with Habeas Rule 5(b),
which now provides that the State's "answer . . . *must*
state whether any claim in the petition is barred by . . .
statute of limitations."  (Emphasis added.)  And forfeiture
is also consistent with (and indeed, arguably suggested by)
Habeas Rule 4, because Rule 4 provides for *sua sponte*
screening and dismissal of habeas petitions only *prior* to
the filing of the State's responsive pleading.[1]

   Most importantly, applying the forfeiture rule to the
limitations period of 28 U. S. C. §2244(d) does not contra-
dict or undermine any provision of the habeas statute.
Quite the contrary, on its most natural reading, the stat-
ute calls for the forfeiture rule.  AEDPA expressly enacted,
without further qualification, "[a] 1-year *period of limita-
tion*" for habeas applications by persons in custody pursu-
ant to the judgments of state courts.  §2244(d)(1) (empha-
sis added).  We have repeatedly stated that the enactment
of time-limitation periods such as that in §2244(d), with-
out further elaboration, produces defenses that are non-

—————

   [1] The Court observes that "[w]ere we to accept Day's position, courts
would never (or, at least, hardly ever) be positioned to raise AEDPA's
[Antiterrorism and Effective Death Penalty Act of 1996] time bar
*sua sponte*," because "information essential to the time calculation is
often absent" at the Rule 4 prescreening stage, *ante*, at 7–8, n. 6.  But to
be distressed at this phenomenon is to beg the question—that is, to
assume that courts *ought* to "be positioned to raise AEDPA's time bar
*sua sponte*."  That is precisely the question before us.

jurisdictional and thus subject to waiver and forfeiture. See *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 393 (1982); see also *Eberhart* v. *United States*, 546 U. S. ___, ___ (2005) *(per curiam)* (slip op., at 3); *Kontrick* v. *Ryan*, 540 U. S. 443, 447 (2004). Absent some affirmative incompatibility with habeas practice, there is no reason why a habeas limitations period should be any different. By imposing an unqualified "period of limitation" against the background understanding that a defense of "limitations" must be raised in the answer, see Civil Rules 8(c), 12(b), the statute implies that the usual forfeiture rule is applicable.

Instead of identifying an inconsistency between habeas corpus practice and the usual civil forfeiture rule, the Court urges that "it would make scant sense to distinguish in this regard AEDPA's time bar from other threshold constraints on federal habeas petitioners" that may be raised *sua sponte—ante*, at 10—namely, exhaustion of state remedies, procedural default, nonretroactivity, and (prior to AEDPA) abuse of the writ. See *Granberry* v. *Greer*, 481 U. S. 129, 133 (1987) (exhaustion); *Caspari* v. *Bohlen*, 510 U. S. 383, 389 (1994) (nonretroactivity). But unlike AEDPA's statute of limitations, these defenses were all created by the habeas courts themselves, in the exercise of their traditional equitable discretion, see *Withrow* v. *Williams*, 507 U. S. 680, 717–718 (1993) (SCALIA, J., concurring in part and dissenting in part), because they were seen as necessary to protect the interests of comity and finality that federal collateral review of state criminal proceedings necessarily implicates. See *McCleskey* v. *Zant*, 499 U. S. 467, 489–491 (1991) (abuse of the writ); *Wainwright* v. *Sykes*, 433 U. S. 72, 80–81 (1977) (procedural default); *Teague* v. *Lane*, 489 U. S. 288, 308 (1989) (nonretroactivity); *Rose* v. *Lundy*, 455 U. S. 509, 515 (1982) (exhaustion of state remedies). Unlike these other defenses, no time limitation—not even equitable

laches—was imposed to vindicate comity and finality. AEDPA's 1-year limitations period is entirely a recent creature of statute. See *ante*, at 2, n. 1. If comity and finality did not compel any time limitation at all, it follows *a fortiori* that they do not compel making a legislatively created, forfeitable time limitation *nonforfeitable.*

In fact, prior to the enactment of AEDPA, we affirmatively rejected the notion that habeas courts' traditionally broad discretionary powers would support their imposition of a time bar. Historically, "there [wa]s no statute of limitations governing federal habeas, and the only laches recognized [wa]s that which affects the State's ability to defend against the claims raised on habeas"—which was imposed by Rule, and not until 1977. *Brecht* v. *Abrahamson*, 507 U. S. 619, 637 (1993); see also *United States* v. *Smith*, 331 U. S. 469, 475 (1947); 17A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §4268.2, p. 497–498 (2d ed. 1988) (hereinafter Wright & Miller). We repeatedly asserted that the passage of time alone could not extinguish the habeas corpus rights of a person subject to unconstitutional incarceration. See *Pennsylvania ex rel. Herman* v. *Claudy*, 350 U. S. 116, 123 (1956); *Chessman* v. *Teets*, 354 U. S. 156, 164–165 (1957). For better or for worse, this doctrine was so well entrenched that the lower courts regularly entertained petitions filed after even extraordinary delays. See, *e.g.*, *Hawkins* v. *Bennett*, 423 F. 2d 948, 949 (CA8 1970) (40 years); *Hamilton* v. *Watkins*, 436 F. 2d 1323, 1325 (CA5 1970) (at least 36 years); *Hannon* v. *Maschner*, 845 F. 2d 1553, 1553–1555 (CA10 1988) (at least 24 years). And in 1977, when enactment of the former Habeas Rule 9(a) "introduce[d] for the first time an element of laches into habeas corpus," 17A Wright & Miller §4268.2, at 498—by adopting the rule against "'prejudicial delay'" to which the Court refers, *ante*, at 2, n. 1—even that limited doctrine was treated as subject to the very same pleading requirements and forfei-

ture rule that the Court rejects today for the stricter limitations period of §2244(d). See *Smith* v. *Secretary of New Mexico Dept. of Corrections*, 50 F. 3d 801, 821–822, n. 30 (CA10 1995); see also *McDonnell* v. *Estelle*, 666 F. 2d 246, 249 (CA5 1982).

There is, therefore, no support for the notion that the traditional equitable discretion that governed habeas proceedings permitted the dismissal of habeas petitions on the sole ground of untimeliness. Whether or not it should have, see *Collins* v. *Byrd*, 510 U. S. 1185, 1186–1187 (1994) (SCALIA, J., dissenting), it did not. The Court's reliance on pre-existing equitable doctrines like procedural default and nonretroactivity is, therefore, utterly misplaced. Nothing in our tradition of *refusing* to dismiss habeas petitions as untimely justifies the Court's decision to beef up the presumptively forfeitable "limitations period" of §2244(d) by making it the subject of *sua sponte* dismissal.

In what appears to be the chief ground of its decision, the Court also observes that "the Magistrate Judge, instead of acting *sua sponte*, might have informed the State of its obvious computation error and entertained an amendment to the State's answer" under Civil Rule 15(a). *Ante*, at 9. "Although an amendment to the State's answer might have obviated this controversy," the Court concedes, "we see no dispositive difference between that route, and the one taken here." *Ibid.* But this consideration cuts in the opposite direction. If there truly were no "dispositive difference" between following and disregarding the rules that Congress has enacted, the natural conclusion would be that there is no compelling reason to *disregard* the Civil Rules.[2] Legislatively enacted rules are surely entitled to

---

[2] I agree with the Court that today's decision will have little impact on the outcome of district court proceedings. In particular, I agree that "if a [district] judge does detect a clear computation error, no Rule,

more respect than this apparent presumption that, when
nothing substantial hangs on the point, they do *not* apply
as written.  And, unlike the novel regime that the Court
adopts today, which will apparently require the develop-
ment of new rules from scratch, there already exists a
well-developed body of law to govern the district courts'
exercise of discretion under Rule 15(a).  See 6 Wright &
Miller §§1484–1488 (2d ed. 1990 and Supp. 2005).  Ock-
ham is offended by today's decision, even if no one else is.

   But, in fact, there are at least two notable differences
between the Civil Rules and the *sua sponte* regime of such
cases as *Granberry* and *Caspari*—both of which involve
sufficiently significant departures from ordinary civil
practice as to require clear authorization from the statute,
the Rules, or historical habeas practice.  First, the *Gran-
berry* regime allows the forfeited procedural defense to be
raised for the first time on appeal, either by the State or
by the appellate court *sua sponte*.  See 481 U. S., at 130,
133; *Schiro* v. *Farley*, 510 U. S. 222, 228–229 (1994).
Ordinary civil practice does not allow a forfeited affirma-
tive defense whose underlying facts were not developed
below to be raised for the first time on appeal.  See
*Weinberger* v. *Salfi*, 422 U. S. 749, 764 (1975); *Metropoli-
tan Housing Development Corp.* v. *Arlington Heights*, 558
F. 2d 1283, 1287 (CA7 1977).  The ability to raise even

_____

statute, or constitutional provision commands the judge to suppress
that knowledge," *ante*, at 10.  Rather, a judge may call the timeliness
issue to the State's attention and invite a motion to amend the plead-
ings under Civil Rule 15(a), under which "leave shall be freely given
when justice so requires."  In fact, in providing for leave whenever
"justice so requires," Rule 15(a), the Civil Rules fully accommodate the
comity and finality interests that the Court thinks require a departure
from the Civil Rules, see *ante*, at 6–7, 10.  Requiring the State to take
the affirmative step of amending its own pleading at least observes the
formalities of our adversary system, which is a nontrivial value in
itself.  See *United States* v. *Burke*, 504 U. S. 229, 246 (1992) (SCALIA, J.,
concurring in judgment).

constitutional errors in criminal trials for the first time on appeal is narrowly circumscribed. See Fed. Rule Crim. Proc. 52(b); *United States* v. *Olano*, 507 U. S. 725, 732 (1993). Comity and finality justified this departure from ordinary practice for historically rooted equitable defenses such as exhaustion. See *Granberry*, *supra,* at 134. But limitations was not such a defense.

Also, *Granberry* and the like raise the possibility that the courts can impose a procedural defense over the State's affirmative decision to waive that defense. The Court takes care to point out that this is not such a case, *ante*, at 11, but it invites such cases in the future. After all, the principal justification for allowing such defenses to be raised *sua sponte* is that they "'implicat[e] values beyond the concerns of the parties,'" including "'judicial efficiency and conservation of judicial resources'" and "the expeditious handling of habeas proceedings." *Ante*, at 6, 8 (quoting *Acosta* v. *Artuz*, 221 F. 3d 117, 123 (CA2 2000)). There are many reasons why the State may wish to disregard the statute of limitations, including the simple belief that it would be unfair to impose the limitations defense on a particular defendant. On the Court's reasoning, a district court would not abuse its discretion in overriding the State's conscious waiver of the defense in order to protect such "'values beyond the concerns of the parties,'" *ante,* at 6.[3] Under the Civil Rules, by contrast, amending a party's

———————

[3] In order to avoid this seemingly unavoidable conclusion, the Court asserts, without relevant citation or reasoning, that "should a State intelligently choose to waive a statute of limitations defense, a district court would not be at liberty to disregard that choice." *Ante,* at 11, n. 11. This assertion is contrary to our statement in *Granberry* v. *Greer*, 481 U. S. 129, 134 (1987)—a case which, on the Court's view, it makes "scant sense to distinguish," *ante*, at 10—that an appellate court may dismiss an unexhausted petition *sua sponte* in "cases in which the State fails, *whether inadvertently or otherwise*, to raise an arguably meritorious nonexhaustion defense." (Emphasis added.) To support its assertion, the Court cites nothing but its own earlier statement: "Ordi-

pleading over his objection would constitute a clear abuse of the trial court's discretion.

In sum, applying the ordinary rule of forfeiture to the AEDPA statute of limitations creates no inconsistency with the Habeas Rules. On the contrary, it is the Court's unwarranted expansion of the timeliness rule enacted by Congress that is inconsistent with the statute, the Habeas Rules, the Civil Rules, and traditional practice. I would hold that the ordinary forfeiture rule, as codified in the Civil Rules, applies to the limitations period of §2244(d). I respectfully dissent.

---

narily in civil litigation, a statutory time limit is forfeited if not raised in a defendant's answer or in an amendment thereto. Fed. Rules Civ. Proc. 8(c), 12(b), and 15(a). And we would count it an abuse of discretion to override a State's deliberate waiver of a limitations defense." *Ante,* at 2. But as the statement itself shows, the "ordinary" inability to override the State's "intelligent" waiver is coupled with an "ordinary" automatic forfeit of the defense if it is not timely raised. The Court does not say why it makes sense, for the statute of limitation of §2244(d)(1)(A), to reject (as it does) the first part of the ordinary practice (automatic forfeiture), while embracing the second (inability to override intelligent waiver). The *reason* for rejecting the first part surely applies just as well to the second: Section 2244(d)(1)(A) supposedly "'implicate[s] values beyond the concerns of the parties,'" including "'judicial efficiency,'" "'conservation of judicial resources'" and "expeditious handling of habeas proceedings." *Ante*, at 6, 8.