GREGORY, Circuit Judge,
dissenting, with whom DAVIS, Senior Circuit Judge, joins:
The majority today makes a choice. It has chosen not to exercise its powers in equity—which the Supreme Court recently affirmed—and to allow a gross injustice to be committed against Deangelo Whiteside. Nobody disputes that Whiteside has been erroneously designated a career offender. Still, the majority insists that he cannot challenge this mistake. As a result of our decision, Whiteside faces at least eight more years in prison. It is simply unjust to deny someone the opportunity to receive a properly calculated sentence. I must dissent.
*188 Make no mistake that we possess the power to grant Whiteside the equitable relief he seeks and, indeed, to which he is entitled. The Supreme Court specifically addressed our ability to do so a few years ago in Holland v. Florida, when it reaffirmed a “presumption in favor ” of equitably tolling AEDPA’s statute of limitations. 560 U.S. 631, 646, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (emphasis in original) (internal quotation marks omitted). “In the case of AEDPA,” wrote the Court, “the presumption’s strength is reinforced by the fact that ‘equitable principles’ have traditionally ‘governed’ the substantive law of habeas corpus____” Id. (quoting Munaf v. Geren, 553 U.S. 674, 693, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008)). While noting AEDPA’s basic purpose of eliminating delays, the Court clarified that the statute was never meant to displace “prior law, under which a petition’s timeliness was always determined under equitable principles.” Id. at 648, 130 S.Ct. 2549. The Court was extraordinarily clear: AEDPA’s statute of limitations “does not set forth ‘an inflexible rule requiring dismissal whenever’ its ‘clock has run.’ ” Id. at 645, 130 S.Ct. 2549 (quoting Day v. McDonough, 547 U.S. 198, 208, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006)).
The Court in Holland specifically rejected the majority’s approach to equitable tolling in two ways. First, it made clear that courts must be flexible and exercise their equitable powers on a case-by-case basis instead of blindly following “mechanical rules.” Id. at 650, 130 S.Ct. 2549 (quoting Holmberg v. Armbrecht, 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946)). Second, a court is not inexorably bound to follow past precedent when doing so would prevent it from “ ‘according] all the relief necessary to correct ... particular injustices.’ ” Id. (quoting Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 248, 64 S.Ct. 997, 88 L.Ed. 1250 (1944)). Instead, we should “follow! ] a tradition in which courts of equity have sought to ‘relieve hardships which, from time to time, arise from a hard and fast adherence’ to more absolute legal rules, which, if strictly applied, threaten the ‘evils of archaic rigidity.’ ” Id. (quoting Hazel-Atlas, 322 U.S. at 248, 64 S.Ct. 997).
Despite this, the majority does exactly what Holland warns against by applying a rigid rule that results in gross injustice. It was our own mistake that resulted in Whiteside’s classification as a career offender, which we finally corrected in United States v. Simmons, 649 F.3d 237 (4th Cir.2011) (en banc). By that point, however, Whiteside had already been sentenced under a regime that wrongly turned a blind eye to the particular circumstances of a defendant’s predicate convictions. The career offender enhancement—for which nobody disputes Whiteside is now legally ineligible—increased his Sentencing Guidelines range from 140-175 months to 262-327 months. After a government-requested downward departure, he was sentenced to 210 months. Had Whiteside received an identical downward departure without the enhancement, he would have received a sentence of 112 months. This difference of more than eight years presents precisely the kind of “situation!] [that] demand[s] equitable intervention ... to correct ... [a] particular injustice!.]” Holland, 560 U.S. at 650, 130 S.Ct. 2549 (quoting Hazel-Atlas, 322 U.S. at 248, 64 S.Ct. 997).
Rather than heed the Supreme Court, the majority constructs for itself and then hides behind false barriers to doing what is right. I of course recognize that we have previously found that the futility of a petitioner’s claim does not constitute a circumstance external to his control justifying an untimely section 2254 petition. Minter v. Beck, 230 F.3d 663, 666 (4th Cir.2000). *189 However, the majority places too much reliance on Minter given the Supreme Court’s later Holland decision.[1] Indeed, in concluding that Whiteside’s claim should be barred, the majority primarily relies upon cases decided prior to Holland. See, e.g., Bousley v. United States, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Certainly the Supreme Court was aware of its own precedent, yet still chose to empower courts to exercise discretion when faced with individual circumstances that might “warrant special treatment.” Holland, 560 U.S. at 650, 130 S.Ct. 2549. Although the majority correctly observes that “[n]othing in Holland undermines the[ ] holdings” in Bousley and Engle, Maj. Op. at 185 it is also true that nothing in Holland prohibits this Court, despite Bousley and Engle, from nonetheless doing justice through the exercise of its equitable powers.
The majority furthermore attempts to justify its position by contending that equitable tolling of Whiteside’s claim would thwart the supposedly holy principle of finality, as well as “trench upon the prerogatives of other institutions.” Maj. Op. at 187. This is simply untrue. Just this year, pursuant to its Congressional mandate, the United States Sentencing Commission issued retroactive amendments to the Guidelines that will reduce the base offense level for certain drug offenses by two. See Sentencing Guidelines for United States Courts, 79 Fed.Reg. 25,996, 26,004 (proposed May 6, 2014). The Commission projects over 46,000 offenders will be eligible for resentencing, though not career offenders like Whiteside.[2] This development—which only takes effect with the approval of Congress'—exposes the majority’s hyperbolic tendencies. Although the majority accuses equitable tolling of portending “a tectonic shift of resources,” Maj. Op. at 186-87, apparently our legislative branch disagrees.
When it comes to “the values safeguarded by according final judgments due effect,” Maj. Op. at 187, I concur with Corn gress that finality gives way to fairness. And the 2014 Guidelines amendments do not mark the first time our government has found it necessary to take steps towards reducing the draconian effects of our sentencing laws. In 2010, after realizing that over eighty percent of crack cocaine defendants were African Americans, Congress took action to correct what had developed as a discriminatory sentencing scheme by passing the Fair Sentencing Act. See United States v. Blewett, 746 F.3d 647, 667 (6th Cir.2013) (en banc) (Moore, J., concurring) (noting that prior to the Act, “the average federal drug sentence for African Americans was forty-nine percent longer than the average federal drug sentence for Caucasians”). It has also been more than one year since our executive branch declined to enforce mandatory-minimum penalties for low-level drug offenses, which, according to our Attorney General, disproportionately affect communities of color.[3]
*190 My point is that the statistical deck was stacked against Deangelo Whiteside from the beginning. Then, our mistake in casting him a career offender relegated him to an even longer term of imprisonment. In the face of this mistake, it is ironic that our branch of government is the one dragging its feet on the road towards equal justice under the law. Rather than take the slightest step in defense of a citizen’s liberty, we throw up our hands and say, “too little, too late.” And for what reason? To avoid the chaos that would befall society if criminals were imprisoned according to a correct understanding of the law?
I dissent.

.I find it glaringly inconsistent of the majority to warn against "invitfing] additional collateral attacks,” Maj. Op. at 187 while simultaneously penalizing Whiteside for not bringing a meritless petition in the time before Simmons was decided, see Maj. Op. at 185 ("[Njothing prevented Whiteside from filing his petition within the one-year statute of limitations.”).

. See News Release, U.S. Sentencing Comm’n, U.S. Sentencing Commission Unanimously Votes to Allow Delayed Retroactive Reduction in Drug Trafficking Sentences (July 18,2014); U.S.S.G. § 1B1.10(a)(2)(A).

. See Eric Holder, U.S. Attorney General, Remarks at the Annual Meeting of the American Bar Association's House of Delegates (Aug. 12, 2013) ("We also must confront the reality that—once they’re in the system'—people of *190 color often face harsher punishments than their peers This isn’t just unacceptable— it is shameful.”). Recently, the Justice Department also expressed its confidence in a robust habeas process by announcing a new policy that it will no longer ask criminal defendants who plead guilty to waive the right to bring future claims of ineffective assistance of counsel. See Press Release, U.S. Dep’t of Justice, Attorney General Holder Announces New Policy to Enhance Justice Department's Commitment to Support Defendants' Right to Counsel (Oct. 14, 2014).