TJOFLAT, Circuit Judge,
dissenting:
In enacting the Antiterrorism and Effective Death Penalty Act of 1996 (“AED-PA”), 28 U.S.C. § 2241 et seq., Congress transferred from the District Courts to the Circuit Courts the power to decide whether a second or successive petition or motion may be brought under §§ 2254 and 2255. The Circuit Courts now perform a *980 gatekeeping function. A Circuit Court may authorize a federal prisoner to file a second or successive § 2255 motion if a panel of the court certifies the motion “to contain ... a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.” Id. § 2255(h)(2).
Pinder requests our authorization to file a second or successive motion on the theory that Johnson v. United States, 576 U.S. -, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), applies retroactively through Welch v. United States, 578 U.S. -, 136 S.Ct. 1257, 194 L.Ed.2d 387 (2016), to the “crime of violence” language of 18 U.S.C. § 924(c) in the way it applies to the “violent felony” language of 18 U.S.C. § 924(e). We grant Pinder’s request on the sole ground that he “has made a prima facie showing that his motion ‘contain[s] ... a new rule of constitutional law, made retroactive to eases on collateral review by the Supreme Court.’ ” Ante at 979 (quoting 28 U.S.C. § 2255(h)(2)) (alteration in the original).
Whether Johnson applies to § 924(c) as it does to § 924(e) presents a pure question of law, which we could readily decide. We do not decide it, though, because, as the majority implies, doing so would be beyond the gatekeeping task Congress has assigned us under AEDPA. Our task is simply to determine whether the movant’s motion contains “a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.” 28 U.S.C. § 2255(h)(2). Pinder’s motion contains one; hence, authorization is mandatory. The majority makes this abundantly clear. “Whether th[e] new rule of constitutional law invalidates Pinder’s sentence must be decided in the first instance by the District Court.” Ante at 979. Our order authorizing the filing “in no way binds” the District Court, which “must decide even the § 2255(h) question ‘fresh, or in the legal vernacular, de novo.’ ” Id. In short, the District Court is on its own in deciding the retroactivity question.
But our gatekeeping function under § 2255(h)(2) is more robust than the majority recognizes. When faced with a straightforward, pure question of law that is dispositive, it is an abdication of our judicial mantle not to decide it.[1] This becomes obvious when one considers what we would have done had the Supreme Court decided Johnson while Pinder’s case was pending on direct appeal.[2] We would have had two choices, as least in theory. First, even though further development of the record would not have been necessary to decide whether Johnson affected the validity of Pinder’s conviction, we could have held the appeal in abeyance and remanded the case to the District Court with the instruction that the District Court decide the retroactivity question in the first instance for sentencing purposes — the same instruction today’s authorization implies — and then certify its decision to us. The District Court would have decided the retroactivity question, a pure question of law, and made the certification. On receipt of its decision, we would then engage in the same task we gave the District Court. Why? Because we would have been faced with the exact same retroactivity question *981 we sent to the District Court. If we affirmed the District Court’s decision, all would have been well and good — the District Court would have gotten it right. If we reversed, the District Court would have wondered in total astonishment why we didn’t decide the retroactivity issue in the first place — why we wasted its time and effort and, what’s worse, made it appear incompetent.[3]
We would not have opted to remand Pinder’s case to the District Court had it still been pending when Johnson was decided. We would have instead decided the retroactivity issue ourselves. We would have done so for obvious reasons. Considerations of efficiency, our institutional respect for the District Court, the legal profession’s respect for our court, and the public’s interest in avoiding a judicial game of musical chairs would have required that we decide the retroactivity question straightway.
Now, consider the case at hand and imagine that we were a court of only three judges. As in the direct appeal I posit above, we would have two choices. We could decide the question of law or we could palm it off to the District Court. If we opted to palm it off, the District Court would resolve the retroactivity issue, and the losing side would appeal.[4] And we would be faced once again with the question of whether Johnson applied to Pin-der’s conviction. If we reversed, the District Court would be just as astonished as the District Court in the direct-appeal scenario would have been had we remanded the retroactivity issue instead of deciding it ourselves and then reversed its decision.[5] In the end, however the District Court resolved the retroactivity issue, we would have faced the issue twice, and depending on our decision, the District Court could have been taxed with the case twice.
But we aren’t a three-judge court. Today’s authorization will result in an appeal to another three-judge panel, and that •panel will pass judgment on today’s decision. The authorization will yield the same inefficiencies, potential for institutional disrespect, and public concern that that would result if, during the direct appeal of a criminal conviction, we palmed off to the District Court a pure question of law that we should have decided in the first instance..
Is it possible that Congress, in drafting AEDPA, envisioned such a waste of judicial time and resources and further delay in the finality of criminal convictions? Cf. Day v. McDonough, 547 U.S. 198, 205, 126 S.Ct. 1675, 1681, 164 L.Ed.2d 376 (2006) (recognizing that “ ‘judicial efficiency and conservation of judicial resources’ ” promotes AEDPA’s interest in finality (quoting Acosta v. Artuz, 221 F.3d 117, 123 (2d Cir. 2000))).[6] 1 hardly think so.

. To the extent that additional briefing from the parties might be necessary to resolve a motion for a second or successive petition presenting a pure question of law, we could order targeted supplemental briefing on an expedited basis.

. Johnson would apply to 18 U.S.C. § 924(e)(2)(B)(ii) convictions like Pinder's in pending cases on direct appeal. See, e.g., Griffith v. Kentucky, 479 U.S. 314, 320-26, 107 S.Ct. 708, 711-15, 93 L.Ed.2d 649 (1987).

. If we affirmed, the District Court would still wonder why we didn't resolve the issue initially and avoid wasting that court’s time and effort.

. If Pinder lost, he would then seek a certificate of appealability . under 28 U.S.C. § 2553(c) based on Johnson.

. As in the direct-appeal scenario described above, if we affirmed, the District Court would still wonder why we didn’t resolve the issue initially and avoid wasting that court’s time and effort.

. These efficiency concerns, which likewise implicate AEDPA's interest in comity and federalism, are only heightened in the context of 28 U.S.C. § 2254.