T.C. Memo. 2006-216

UNITED STATES TAX COURT

BARRY AND SHERRY BLONDHEIM, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15549-05L.                  Filed October 10, 2006.

<u>Terri A. Merriam</u>, <u>Jaret R. Coles</u>, <u>Asher B. Bearman</u>, and
<u>Jennifer A. Gellner</u>, for petitioners.

<u>Thomas N. Tomashek</u> and <u>Gregory M. Hahn</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioners petitioned the Court under section
6330(d) to review the determination of respondent's Office of
Appeals (Appeals) sustaining a proposed levy relating to $298,003
of Federal income taxes owed by petitioners for 1981 through

1986.[1]  Petitioners argue that Appeals was required to accept their offer of $83,213 to compromise $298,003 of Federal income tax liability that respondent's records reported were due from them for 1981 through 1986.  We decide whether Appeals abused its discretion in rejecting that offer.[2]  We hold it did not.

FINDINGS OF FACT

The parties filed with the Court stipulations of fact and accompanying exhibits.  The stipulated facts are found accordingly.  When the petition was filed, petitioners resided in Kennewick, Washington.

Beginning in 1984, petitioners' Federal income tax returns claimed losses and credits from their involvement in a partnership organized and operated by Walter J. Hoyt, III (Hoyt).  The partnership was called Shorthorn Genetic Engineering 1984-3.  Hoyt was the partnership's general partner and tax matters partner, and the partnership was subject to the unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility

---

[1] Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code.  Dollar amounts are rounded.

[2] Petitioners also dispute respondent's determination that they are liable for increased interest under sec. 6621(c).  This interest relates to deficiencies attributable to "computational adjustments", see secs. 6230(a)(1) and 6231(a)(6), made following the Court's decision in Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, T.C. Memo. 1996-515.  As to this dispute, the parties have agreed to be bound by a final decision in Ertz v. Commissioner, docket No. 20336-04L, which involves a similar issue.

Act of 1982, Pub. L. 97-248, sec. 402(a), 96 Stat. 648. Hoyt was convicted on criminal charges relating to the promotion of this and other partnerships.

Petitioners' claim to the losses and credits resulted in the underreporting of their 1981 through 1986 taxable income. On December 16, 2003, respondent mailed to petitioners a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing. The notice informed petitioners that respondent proposed to levy on their property to collect Federal income taxes that they owed for 1981 through 1986. The notice advised petitioners that they were entitled to a hearing with Appeals to review the propriety of the proposed levy.

On January 14, 2004, petitioners asked Appeals for the referenced hearing. On June 8, 2005, Linda Cochran (Cochran), a settlement officer in Appeals, held the hearing with petitioners' counsel. Cochran and petitioners' counsel discussed petitioners' intent to offer to compromise their 1981 through 1986 Federal income tax liability to promote effective tax administration. Petitioners contended that Appeals should accept their offer as a matter of equity and public policy. Petitioners stated that it took a long time to resolve the Hoyt partnership cases and noted that Hoyt had been convicted on the criminal charges.

On June 8, 2005, petitioners tendered to Cochran on Form 656, Offer in Compromise, a written offer to pay $83,213 to

compromise their reported $298,003 liability. The offer was limited to a claim of effective tax administration because petitioners had sufficient assets to pay their tax liability in full. Petitioners supplemented their offer with a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, four letters totaling approximately 65 pages, and volumes of documents. The Form 433-A reported that petitioners owned assets with a total current value of $1,388,757, inclusive of the following:[3]

| Assets | Current value |
|---|---|
| Cash in accounts | $46,441 |
| Cash value of life insurance | 12,707 |
| Pensions & IRA | 491,121 |
| Vehicles: | |
| 2000 Cadillac Escalade | 11,975 |
| 1984 Subaru Brat | 138 |
| Real estate (residence) | [1]136,800 |
| Real estate (Oregon property) | 96,693 |
| Real estate (other properties) | 588,882 |
| Furniture/personal effects | 4,000 |
| | 1,388,757 |

[1] Petitioners reported on Form 433-A that this figure represents 80 percent of their home's appraised value.

The Form 433-A also reported that petitioners owed $9,131 on the Cadillac Escalade, $103,482 on their residence, $166,041 on their various other properties, and had taken a $10,000 loan against

---

[3] Form 433-A states that each asset reported on the form should be valued at its "Current value", defined on the form as "the amount you could sell the asset for today".

one of their pension plans.  The Form 433-A reported the following monthly items of income and expense:

|              Items of income | Amount |
|------------------------------|--------|
| Husband's wages              | $3,700 |
| Wife's wages                 |  2,500 |
| Rental income                |  4,434 |
|                              | 10,634 |

|                Items of expense | Amount |
|---------------------------------|--------|
| Food, clothing, and miscellaneous | $1,280 |
| Housing and utilities           |  1,953 |
| Transportation                  |    596 |
| Medical expenses                |    669 |
| Taxes                           |  2,250 |
|                                 |  6,748 |

Cochran determined that petitioners' net realizable equity in their cash was the $46,441 reported in their bank accounts and that petitioners' net realizable equity in their life insurance, Subaru Brat, and Oregon property was the same as the reported values.[4]  Cochran noted the various encumbrances reported by petitioners, and in the case of the furniture/personal effects, allowed a $7,200 exemption for their entire value under section 6334(a)(2).[5]  She summarized petitioners' assets and liabilities as follows:

---

[4] Cochran was told by petitioners that they had ascertained the value of each vehicle by using its trade-in value and considering its condition to be "fair."

[5] Whereas sec. 6334(a)(2) limits this exemption to $6,250, Cochran does not explain in the notice of determination why she allowed petitioners the greater amount.

| Assets | Fair market value | Quick sale value | Encumbrance or exemption | Net realizable equity |
|---|---|---|---|---|
| Cash | $46,441 | -- | -- | $46,441 |
| Cash value of life insurance | 12,707 | -- | -- | 12,707 |
| Retirement accounts | 491,121 | -- | $10,000 | 481,121 |
| Vehicles: | | | | |
|   1984 Subaru Brat | [1]134 | $107 | -- | 107 |
|   2000 Cadillac Escalade | 11,975 | 9,580 | 9,131 | 449 |
| Real estate (residence) | 171,000 | -- | 103,482 | 67,518 |
| Real estate (Oregon property) | 96,693 | -- | -- | 96,693 |
| Furniture/personal effects | 4,000 | -- | 7,200 | 0 |
| | 834,071 | 9,687 | 129,813 | 705,036 |

[1] Petitioners had listed the value of this vehicle as $138.

In her comments following this summary, Cochran stated that she had not taken into account the value of petitioners' S corporation, Bear Mart Auto Sales, Inc.[6]  She also did not include petitioners' real estate holdings, reported as having a current value of $588,882.

The only adjustment that Cochran made to petitioners' claimed expenses was that she allowed $1,093 for housing instead of the $1,953 that petitioners had claimed.  Cochran stated that she made this adjustment in accordance with current local guidelines and that she considered petitioners' particular circumstances, but they did not warrant allowing the higher figure submitted by petitioners.

Cochran determined that petitioners' net realizable equity in their assets was $705,036 and that they had a monthly

_____

[6] Petitioners had completed and submitted to Cochran a Form 433-B, Collection Information Statement for Businesses, which listed the assets and liabilities of their S corporation.

disposable income of $4,746. She calculated that petitioners could pay $227,808 from their future income.[7] In sum, Cochran concluded, petitioners' net realizable equity in assets and future income equaled $932,844.

On July 22, 2005, Appeals issued petitioners a notice of determination sustaining the proposed levy. The notice concludes that petitioners' $83,213 offer-in-compromise is not an appropriate collection alternative to the proposed levy. The notice, citing Internal Revenue Manual (IRM) sections 5.8.11.2.1 and 5.8.11.2.2, states that petitioners' offer does not meet the Commissioner's guidelines for consideration as an offer-in-compromise to promote effective tax administration on the basis of economic hardship or equity and public policy. Cochran noted that since petitioners had not specified the basis on which they were making their offer, she considered it under both economic hardship and equity and public policy grounds.

As to petitioners' offer-in-compromise to promote effective tax administration due to economic hardship, the notice states:

> Considered under economic hardship, the taxpayers have the ability to pay all amounts owed from either their assets or their income stream and still have assets and an income stream remaining worth over $630,000. The amount being offered by the taxpayers represents 8% of the taxpayers' Reasonable Collection Potential (RCP).

---

[7] Cochran arrived at $227,808 by multiplying petitioners' monthly disposable income of $4,746 by a factor of 48.

> The taxpayers' circumstances were considered, but the taxpayers would have substantial assets and income stream remaining ($630,000+) to cover their living and medical expenses.  As such, the taxpayers failed to document economic hardship in accordance with Internal Revenue Manual 5.8.11.2.1.

As to petitioners' offer-in-compromise to promote effective tax administration based on equity and public policy, the notice states: "When considered under public policy or equity grounds, the taxpayers' Effective Tax Administration offer proposal fails to meet the criteria for such consideration under Internal Revenue Manual 5.8.11.2.2 * * * [and], therefore, cannot be considered."  The notice further states as to Cochran's balancing of efficient collection with the legitimate concerns of taxpayers that

> the Settlement Officer has evaluated the taxpayers' $83,213 offer to compromise the underlying liabilities as a collection alternative to the proposed levy action.  Based on that evaluation, the taxpayers' offer of $83,213 could not be recommended for acceptance, and therefore cannot be considered as a collection alternative.

> In all other respects, the proposed levy action regarding the taxpayers represents the only efficient means for collection of the liabilities at issue in this case.

The notice states that petitioners have neither offered an argument nor cited any authority to permit Appeals to deviate from the provisions of the IRM.

OPINION

This case is another in a long list of cases brought in this Court involving respondent's proposal to levy on the assets of a partner in a Hoyt partnership to collect Federal income taxes attributable to the partner's participation in the partnership. Petitioners argue that Appeals was required to let them pay $83,213 to compromise a $298,003 Federal income tax liability for 1981 through 1986. Where an underlying tax liability is not at issue in a case invoking our jurisdiction under section 6330(d), we review the determination of Appeals for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); see also Clayton v. Commissioner, T.C. Memo. 2006-188; Barnes v. Commissioner, T.C. Memo. 2006-150. We reject the determination of Appeals only if the determination was arbitrary, capricious, or without sound basis in fact or law. See Cox v. Commissioner, 126 T.C. 237, 255 (2006); Murphy v. Commissioner, 125 T.C. 301, 308, 320 (2005).

Where, as here, we decide the propriety of Appeals's rejection of an offer-in-compromise, we review the reasoning underlying that rejection to decide whether the rejection was arbitrary, capricious, or without sound basis in fact or law. We do not substitute our judgment for that of Appeals, and we do not decide independently the amount that we believe would be an acceptable offer-in-compromise. See Murphy v. Commissioner,

<u>supra</u> at 320; see also <u>Clayton v. Commissioner</u>, <u>supra</u>; <u>Barnes v. Commissioner</u>, <u>supra</u>; <u>Fowler v. Commissioner</u>, T.C. Memo. 2004-163; <u>Fargo v. Commissioner</u>, T.C. Memo. 2004-13, affd. 447 F.3d 706 (9th Cir. 2006).  Nor do we usually consider arguments, issues, or other matters raised for the first time at trial, but we limit ourselves to matter brought to the attention of Appeals.

See <u>Murphy v. Commissioner</u>, <u>supra</u> at 308; <u>Magana v. Commissioner</u>, 118 T.C. 488, 493 (2002).  "[E]vidence that * * * [a taxpayer] might have presented at the section 6330 hearing (but chose not to) is not admissible in a trial conducted pursuant to section 6330(d)(1) because it is not relevant to the question of whether the Appeals officer abused her discretion."  <u>Murphy v. Commissioner</u>, <u>supra</u> at 315.[8]

_____

[8] In <u>Murphy v. Commissioner</u>, 125 T.C. 301 (2005), the Court declined to include in the record external evidence relating to facts not presented to Appeals.  The Court distinguished <u>Robinette v. Commissioner</u>, 123 T.C. 85 (2004), revd. 439 F.3d 455 (8th Cir. 2006), and held that the external evidence was inadmissible in that it was not relevant to the issue of whether Appeals abused its discretion.  In a memorandum that petitioners filed with the Court on Apr. 13, 2006, pursuant to an order of the Court directing petitioners to explain the relevancy of any external evidence that they desired to include in the record of this case, petitioners made no claim that they had offered any of the external evidence to Cochran.  Instead, as we read petitioners' memorandum in the light of the record as a whole, petitioners wanted to include the external evidence in the record of this case to prove that Cochran abused her discretion by not considering facts and documents that they had consciously decided not to give to her.  Consistent with <u>Murphy v. Commissioner</u>, <u>supra</u>, we sustained respondent's relevancy objections to the external evidence.  Accord <u>Clayton v. Commissioner</u>, T.C. Memo. 2006-188; <u>Barnes v. Commissioner</u>, T.C. Memo. 2006-150.

Section 6330(c)(2)(A)(iii) allows a taxpayer to offer to compromise a Federal tax debt as a collection alternative to a proposed levy. Section 7122(c) authorizes the Commissioner to prescribe guidelines to determine when a taxpayer's offer-in-compromise should be accepted. The applicable regulations, section 301.7122-1(b), Proced. & Admin. Regs., list three grounds on which the Commissioner may accept an offer-in-compromise of a Federal tax debt. These grounds are "Doubt as to liability", "Doubt as to collectibility", and to "Promote effective tax administration". Sec. 301.7122-1(b)(1), (2), and (3), Proced. & Admin. Regs. Petitioners reported on their Form 433-A that they had assets worth $1,388,757. Cochran determined that petitioners' reasonable collection potential (taking into account their assets as well as future income) was $932,844. Petitioners can afford to pay their $298,003 tax liability in full and do not argue that the liability is in doubt. They seek to qualify for an offer-in-compromise to promote effective tax administration. See sec. 301.7122-1(b)(3), Proced. & Admin. Regs.; cf. Fargo v. Commissioner, 447 F.3d 706 (9th Cir. 2006) (taxpayers made an offer-in-compromise to promote effective tax administration where they had sufficient assets to pay their tax liability in full).

Petitioners argue that respondent was required to compromise their tax liability to promote effective tax administration. The Commissioner may compromise a tax liability to promote effective

tax administration when collection of the full liability will create economic hardship and the compromise would not undermine compliance with the tax laws by taxpayers in general. See sec. 301.7122-1(b)(3)(i), (iii), Proced. & Admin. Regs. If a taxpayer does not qualify for effective tax administration compromise on grounds of economic hardship, the regulations also allow the Commissioner to compromise a tax liability to promote effective tax administration when the taxpayer identifies compelling considerations of public policy or equity. See sec. 301.7122-1(b)(3)(ii), Proced. & Admin. Regs.

Cochran considered all of the evidence submitted to her by petitioners and applied the guidelines for evaluating an offer-in-compromise to promote effective tax administration. Although petitioners did not specifically state on which basis they were submitting their effective tax administration offer-in-compromise, Cochran considered it under both economic hardship and public policy and equity grounds. Cochran determined that petitioners' offer was unacceptable because they had not demonstrated that they would suffer economic hardship and public policy and equity reasons did not weigh in favor of accepting their offer. Cochran's determination to reject petitioners' offer-in-compromise was not arbitrary, capricious, or without a sound basis in fact or law, and it was not abusive or unfair to petitioners. Cochran's determination was based on a reasonable

application of the guidelines, which we decline to second-guess.
See Speltz v. Commissioner, 124 T.C. 165 (2005), affd. 454 F.3d
782 (8th Cir. 2006); Clayton v. Commissioner, supra; Barnes v.
Commissioner, T.C. Memo. 2006-150.

Petitioners make seven arguments in advocating a contrary
result.  First, petitioners argue that the Court lacks
jurisdiction to review the rejection of their offer-in-
compromise.  Petitioners allege that Hoyt had a conflict of
interest that prevented him from extending the periods of
limitation for the partnerships in which petitioners were
partners.  Petitioners conclude that any consents signed by Hoyt
to extend the periods of limitation were invalid, which in turn
means that the Court lacks jurisdiction because the applicable
periods of limitation have otherwise expired.

Petitioners' challenge to this Court's jurisdiction is
groundless, frivolous, and unavailing.  It is well settled that
the expiration of the period of limitation is an affirmative
defense and not a factor of this Court's jurisdiction.  See Day
v. McDonough, 547 U.S. ___, 126 S. Ct. 1675, 1681 (2006) ("A
statute of limitations defense * * * is not 'jurisdictional'");
Kontrick v. Ryan, 540 U.S. 443, 458 (2004) ("Time bars * * *
generally must be raised in an answer or responsive pleading.");
see also Davenport Recycling Associates v. Commissioner, 220 F.3d
1255, 1259 (11th Cir. 2000), affg. T.C. Memo. 1998-347; Chimblo

v. Commissioner, 177 F.3d 119, 125 (2d Cir. 1999), affg. T.C. Memo. 1997-535; Columbia Bldg., Ltd. v. Commissioner, 98 T.C. 607, 611 (1992); Robinson v. Commissioner, 57 T.C. 735, 737 (1972). Where, as here, the claim of a time bar relates to items of a partnership, the claim must be made in the partnership proceeding and may not be considered at a proceeding involving the personal income tax liability of one or more of the partners of the partnership. See Davenport Recycling Associates v. Commissioner, supra at 1259-1260; Chimblo v. Commissioner, supra at 125; Kaplan v. United States, 133 F.3d 469, 473 (7th Cir. 1998).

Second, petitioners argue that Cochran's rejection of their offer-in-compromise conflicts with the congressional committee reports underlying the enactment of section 7122. According to petitioners, their case is a "longstanding" case, and those reports require that respondent resolve such cases by forgiving interest and penalties that otherwise apply. We disagree with petitioners' reading and application of the legislative history underlying section 7122. Petitioners' argument on this point is essentially the same argument that was considered and rejected by the Court of Appeals for the Ninth Circuit in Fargo v. Commissioner, 447 F.3d at 711-712. We do likewise here for the same reasons stated in that opinion. We add that petitioners' counsel participated in the appeal in Fargo v. Commissioner,

supra, as counsel for the amici.  While petitioners in their brief suggest that the Court of Appeals for the Ninth Circuit knowingly wrote its opinion in Fargo in such a way as to distinguish that case from the cases of counsel's similarly situated clients (e.g., petitioners), and otherwise to allow those clients to receive an abatement of their liability attributable to partnerships such as those here, we do not read the opinion of the Court of Appeals for the Ninth Circuit in Fargo to support that conclusion.

Third, petitioners argue that Cochran inadequately considered their unique facts and circumstances.  We disagree. Cochran reviewed and considered all information given to her by petitioners.  On the basis of the facts and circumstances of petitioners' case as they had been presented to her, Cochran determined that petitioners' offer did not meet the applicable guidelines for acceptance of an offer-in-compromise to promote effective tax administration based on economic hardship or public policy or equity grounds.  We find no abuse of discretion in that determination.  Nor do we find that Cochran inadequately considered the information actually given to her by petitioners. Cochran allowed the full amount of medical expenses that petitioners submitted on their Form 433-A.  While petitioners claimed during the administrative hearing that they would incur increased medical expenses in the future, they provided no

substantiation of these costs to Cochran.  Because petitioners did not submit any documentation of future medical expenses, we find that Cochran did not abuse her discretion in not allowing future medical costs that are entirely speculative.  See Fargo v. Commissioner, 447 F.3d at 710 (it is not an abuse of discretion for Appeals to disregard claimed medical expenses that are speculative or not related to the taxpayer); see also Clayton v. Commissioner, supra; Barnes v. Commissioner, supra.

Fourth, petitioners argue that Cochran did not adequately take into account the economic hardship they claim they will suffer by having to pay more than $83,213 of their tax liability. We disagree.  Section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., states that economic hardship occurs when a taxpayer is "unable to pay his or her reasonable basic living expenses." Section 301.7122-1(c)(3), Proced. & Admin. Regs., sets forth factors to consider in evaluating whether collection of a tax liability would cause economic hardship, as well as some illustrative examples.  One of the examples involves a taxpayer who provides fulltime care to a dependent child with a serious longterm illness.  A second example involves a taxpayer who would lack adequate means to pay his basic living expenses were his only asset to be liquidated.  A third example involves a disabled taxpayer with a fixed income and a modest home specially equipped to accommodate his disability, and who is unable to borrow

against his home because of his disability.  See sec.
301.7122-1(c)(3)(iii), Examples (1), (2), and (3), Proced. &
Admin. Regs.  None of these examples bears any resemblance to
this case but instead "describe more dire circumstances".  Speltz
v. Commissioner, 454 F.3d at 786.

Nor have petitioners articulated with any specificity the
purported economic hardship they will suffer if they are not
allowed to compromise their liability for $83,213.  Petitioners
have given us no reason to disagree with the essence of Cochran's
determination that petitioners' health does not render them
"incapable of earning a living", nor have we reason to conclude
that petitioners' "financial resources will be exhausted
providing for care and support during the course of the
condition".[9]  Sec. 301.7122-1(c)(3)(i)(A), Proced. & Admin. Regs.

We also are mindful that any decision by Cochran to accept
petitioners' offer-in-compromise to promote effective tax
administration must be viewed against the backdrop of section
301.7122-1(b)(3)(iii), Proced. & Admin. Regs.  That section
requires that Cochran deny petitioners' offer if her acceptance
of it would undermine voluntary compliance with tax laws by

---

[9] We also note that the Court of Appeals for the Ninth
Circuit in Fargo v. Commissioner, 447 F.3d 706, 710 (9th Cir.
2006), affg. T.C. Memo. 2004-13, dismissed a similar claim of
economic hardship advanced by the taxpayers there.  Petitioners
here, like the taxpayers in Fargo, have substantial assets and
future income potential and can afford to pay their tax liability
in full.

taxpayers in general.  Thus, even if we were to assume arguendo that petitioners would suffer economic hardship, a finding that we emphasize we do not make, we would not find that Cochran's rejection of petitioners' offer was an abuse of discretion because we conclude below (in our discussion of petitioners' fifth argument) that her acceptance of that offer would have undermined voluntary compliance with tax laws by taxpayers in general.  The prospect that acceptance of an offer will undermine compliance with the tax laws militates against its acceptance. See Rev. Proc. 2003-71, 2003-2 C.B. 517; IRM sec. 5.8.11.2.2; see also Clayton v. Commissioner, T.C. Memo. 2006-188; Barnes v. Commissioner, T.C. Memo. 2006-150.

Fifth, petitioners argue that public policy demands that their offer-in-compromise be accepted because they were victims of fraud.  We disagree.  While the regulations do not set forth a specific standard for evaluating an offer-in-compromise based on claims of public policy or equity, the regulations contain two illustrative examples.  See sec. 301.7122-1(c)(3)(iv), Examples (1) and (2), Proced. & Admin. Regs.  The first example describes a taxpayer who is seriously ill and unable to file income tax returns for several years.  The second example describes a taxpayer who received erroneous advice from the Commissioner as to the tax effect of the taxpayer's actions.  Neither example bears any resemblance to this case.  See Speltz v. Commissioner,

454 F.3d at 786.  Unlike the exceptional circumstances exemplified in the regulations, petitioners' situation is neither unique nor exceptional in that petitioners' situation mirrors that of numerous taxpayers who claimed tax shelter deductions in the 1980s and 1990s, obtained the tax advantages, promptly forgot about their "investment", and now realize that paying their taxes may require a change of lifestyle.[10]  See Clayton v. Commissioner, supra; Barnes v. Commissioner, supra.

We also believe that compromising petitioners' case on grounds of public policy or equity would not promote effective tax administration.  While petitioners portray themselves as victims of Hoyt's alleged fraud and respondent's alleged delay in dealing with Hoyt, they take no responsibility for their tax predicament.  We cannot agree that acceptance by respondent of petitioners' $83,213 offer to satisfy their $298,003 tax liability would enhance voluntary compliance by other taxpayers.

---

[10] Of course, the examples in the regulations are not meant to be exhaustive, and petitioners' situation is not identical to that of the taxpayers in Fargo v. Commissioner, 447 F.3d at 714, regarding whom the Court of Appeals for the Ninth Circuit noted that "no evidence was presented to suggest that Taxpayers were the subject of fraud or deception".  Such considerations, however, have not kept this Court from finding investors in Hoyt's shelters to be culpable of negligence, most recently in Keller v. Commissioner, T.C. Memo. 2006-131, nor prevented the Courts of Appeals for the Sixth and Tenth Circuits from affirming our decisions to that effect in Mortensen v. Commissioner, 440 F.3d 375 (6th Cir. 2006), affg. T.C. Memo. 2004-279, and Van Scoten v. Commissioner, 439 F.3d 1243 (10th Cir. 2006), affg. T.C. Memo. 2004-275.

A compromise on that basis would place the Government in the unenviable role of an insurer against poor business decisions by taxpayers, reducing the incentive for taxpayers to investigate thoroughly the consequences of transactions into which they enter. It would be particularly inappropriate for the Government to play that role here, where the transaction at issue involves a tax shelter. Reducing the risks of participating in tax shelters would encourage more taxpayers to run those risks, thus undermining rather than enhancing compliance with the tax laws.[11] See Clayton v. Commissioner, supra; Barnes v. Commissioner, supra.

Sixth, petitioners argue that Cochran failed to balance efficient collection with the legitimate concern that collection be no more intrusive than necessary. We disagree. Cochran thoroughly considered this balancing issue on the basis of the information and proposed collection alternative given to her by petitioners. She concluded that "the proposed levy action

_____

[11] Nor does the fact that petitioners' case may be "longstanding" overcome the detrimental impact on voluntary compliance that could result from respondent's accepting petitioners' offer-in-compromise. An example in IRM sec. 5.8.11.2.2 implicitly addresses the "longstanding" issue. There, the taxpayer invested in a tax shelter in 1983, thereby incurring tax liabilities for 1981 through 1983. He failed to accept a settlement offer by respondent that would have eliminated a substantial portion of his interest and penalties. Although the example, which is similar to petitioners' case in several respects, would qualify as a "longstanding" case by petitioners' standards, the offer was not acceptable because acceptance of it would undermine compliance with the tax laws.

regarding the taxpayers represents the only efficient means for collection of the liabilities at issue in this case". While petitioners assert that Cochran did not consider all of the facts and circumstances of this case, "including whether the circumstances of a particular case warrant acceptance of an amount that might not otherwise be acceptable under the Secretary's policies and procedures", sec. 301.7122-1(c)(1), Proced. & Admin. Regs., we find to the contrary. Cochran thoroughly considered petitioners' arguments for accepting their offer-in-compromise, and she rejected the offer only after concluding that petitioners could pay much more of their tax liability than the $83,213 they offered. Cf. IRM sec. 5.8.11.2.1(11) ("When hardship criteria are identified but the taxpayer does not offer an acceptable amount, the offer should not be recommended for acceptance").

Seventh, petitioners argue that Cochran inappropriately failed to consider whether they qualified for an abatement of interest for reasons other than those described in section 6404(e). We disagree. We find nothing to suggest that Cochran believed that petitioners' sole remedy for interest abatement in this case rested on the rules of section 6404(e). In fact, regardless of the rules of section 6404(e), Cochran obviously would have abated interest in this case had she agreed to let

petitioners compromise their $298,003 liability by paying less than the amount of interest included within that liability.

We hold that Appeals did not abuse its discretion in rejecting petitioners' $83,213 offer-in-compromise.  In so holding, we express no opinion as to the amount of any compromise that petitioners could or should be required to pay, or that respondent is required to accept.  The only issue before us is whether Appeals abused its discretion in refusing to accept petitioners' specific offer-in-compromise in the amount of $83,213.  See <u>Speltz v. Commissioner</u>, 124 T.C. at 179-180.  We have considered all arguments made by petitioners for a contrary holding and have found those arguments not discussed herein to be irrelevant and/or without merit.

<u>An appropriate order will be issued</u>.