# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 8, 2019        Decided May 10, 2019

No. 18-7052

HENRI MAALOUF, ET AL.,
APPELLANTS

v.

ISLAMIC REPUBLIC OF IRAN AND IRANIAN MINISTRY OF
INFORMATION AND SECURITY,
APPELLEES

Consolidated with 18-7053

Appeals from the United States District Court
for the District of Columbia
(No. 1:16-cv-00280)
(No. 1:16-cv-01507)

*Steven M. Schneebaum* argued the cause and filed the briefs for appellants Henri Maalouf, et al.

*Stuart H. Newberger*, *Clifton S. Elgarten*, *Aryeh S. Portnoy*, *John L. Murino*, and *Emily M. Alban* were on the brief for *amici curiae* Smith plaintiffs in support of appellants.

*Jonathan S. Massey* was on the brief for *amicus curiae* Professor Stephen I. Vladeck supporting plaintiffs-appellants.

*Erica Hashimoto*, Director, and *Marcella Coburn*, Attorney, both appointed by the court, argued the causes as *amicus curiae* in support of the District Courts' Orders in No. 18-7052, et al., No. 18-7060, et al., and No. 18-7122, et al. With them on the brief were *Rebecca Deucher*, *Sean Lavin*, and *James O'Toole*, Student Attorneys.

*Christopher M. Curran*, *Nicole Erb*, *Claire A. DeLelle*, and *Celia A. McLaughlin* were on the brief for *amicus curiae* The Republic of Sudan in support of the court appointed amicus curiae.

3

No. 18-7060

NASRIN AKHTAR SHEIKH, AS THE SPOUSE OF FAHRAT
MAHMOOD SHEIKH, AN EMPLOYEE OF THE UNITED STATES
GOVERNMENT OR AN EMPLOYEE OF A CONTRACTOR FOR THE
UNITED STATES GOVERNMENT DECEASED, ET AL.,
APPELLANTS

v.

MINISTRY OF THE INTERIOR OF THE REPUBLIC OF SUDAN, ET
AL.,
APPELLEES

————

Consolidated with 18-7065, 18-7090

————

Appeals from the United States District Court
for the District of Columbia
(No. 1:14-cv-02090)
(No. 1:15-cv-00951)
(No. 1:14-cv-02118)

————

*Derek L. Shaffer* argued the cause for appellants Nasrin
Sheikh, et al. With him on the briefs were *Stephen M. Hauss*,
*Milin Chun*, *Nazareth M. Haysbert*, and *Daniel Sage Ward*.

*Erica Hashimoto*, Director, and *Marcella Coburn*,
Attorney, both appointed by the court, argued the causes as
*amicus curiae* in support of the District Courts' Orders in No.
18-7052, et al., No. 18-7060, et al., and No. 18-7122, et al.
With them on the brief were *Rebecca Deucher*, *Sean Lavin*, and
*James O'Toole*, Student Attorneys.

*Christopher M. Curran*, *Nicole Erb*, *Claire A. DeLelle*, and *Celia A. McLaughlin* were on the brief for *amicus curiae* The Republic of Sudan in support of the court appointed amicus curiae.

5

No. 18-7122

RITA BATHIARD, ON HER OWN BEHALF AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF CESAR BATHIARD, ET AL.,
APPELLANTS

v.

ISLAMIC REPUBLIC OF IRAN AND IRANIAN MINISTRY OF
INFORMATION AND SECURITY,
APPELLEES

————

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-01549)

————

*Clifton S. Elgarten* argued the cause for appellants Rita Bathiard, et al. On the briefs were *Thomas Fortune Fay*, *Amanda Fox Perry*, and *John Vail*.

*Erica Hashimoto*, Director, and *Marcella Coburn*, Attorney, both appointed by the court, argued the causes as *amicus curiae* in support of the District Courts' Orders in No. 18-7052, et al., No. 18-7060, et al., and No. 18-7122, et al. With them on the brief were *Rebecca Deucher*, *Sean Lavin*, and *James O'Toole*, Student Attorneys.

*Christopher M. Curran*, *Nicole Erb*, *Claire A. DeLelle*, and *Celia A. McLaughlin* were on the brief for *amicus curiae* The Republic of Sudan in support of the court appointed amicus curiae.

Before: SRINIVASAN and PILLARD, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: On April 18, 1983, and September 20, 1984, the militant group Hezbollah detonated car bombs outside United States diplomatic facilities in Beirut, Lebanon, killing dozens and wounding many more. On August 7, 1998, truck bombs exploded outside the U.S. embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania, killing more than two hundred and injuring more than a thousand. These two bombings were the work of al Qaeda. In the decades since, the Islamic Republic of Iran has been linked to all four bombings, while the Republic of Sudan's support for al Qaeda has implicated it in the 1998 attacks.

Foreign sovereigns are generally immune from suit in U.S. courts. However, district courts in this Circuit have found Iran and Sudan liable for the attacks in numerous suits filed by victims and their families under the terrorism exception of the Foreign Sovereign Immunities Act (FSIA), the statute governing the amenability of foreign nations to lawsuits in the United States. The FSIA's terrorism exception was first enacted in 1996 but was replaced in 2008 with, *inter alia*, a more expansive provision allowing for suits by non-U.S. nationals.

In this consolidated opinion, we address six cases arising from the Beirut, Nairobi, and Dar es Salaam attacks. Plaintiffs in three of the suits are family members or estates of victims of the 1998 bombings. The plaintiffs in these cases named Sudan and Iran as defendants. The remaining three actions seek damages from Iran for deaths and injuries resulting from the

1983 and 1984 attacks. The first five suits were assigned to the same District Court Judge, including all of the complaints against Sudan, which successfully moved to dismiss the claims against it as untimely. Iran, in contrast, failed to appear to defend the complaints raised against it. The plaintiffs moved for default judgment against Iran. The District Court, however, acted *sua sponte* to consider whether the complaints against Iran were timely. After briefing from the parties, the District Court ruled that the claims against Iran were untimely, denied the motions for default judgment, and dismissed plaintiffs' actions. The District Court Judge assigned to the sixth case followed suit on the same grounds.

All plaintiffs now appeal the dismissals of their claims against Iran, contending that the District Courts erred in raising the statute of limitations *sua sponte* and in dismissing their complaints as untimely. One group of plaintiffs also challenges the denial of motions for relief from judgment that they filed after their claims were dismissed.

We do not reach the statute of limitations issue or the post-judgment motions. Rather, we conclude that the District Court lacks authority to *sua sponte* raise a forfeited statute of limitations defense in an FSIA terrorism exception case, at least where the defendant sovereign fails to appear. We therefore reverse the judgments of the District Courts, vacate the dismissals of the complaints, and remand for further proceedings.

## I. BACKGROUND

### A. The FSIA and the Terrorism Exception

The FSIA, enacted in 1976, "provides the sole means for suing a foreign sovereign in the courts of the United States."

*Owens v. Republic of Sudan*, 864 F.3d 751, 763 (D.C. Cir. 2017). The statute establishes that foreign states are "presumptively immune from the jurisdiction of the federal and state courts, 28 U.S.C. § 1604, subject to several exceptions codified in §§ 1605, 1605A, 1605B, and 1607." *Id.* These include the "terrorism exception," which provides that:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605A(a)(1); *see also id.* § 1605A(a)(2)(A)(i)(I) (stating that the foreign state must have been designated a "state sponsor of terrorism"); *id.* § 1605A(h)(6) (explaining that the term "state sponsor of terrorism" means "a country the government of which the Secretary of State has determined . . . is a government that has repeatedly provided support for acts of international terrorism").

Congress adopted the first version of the terrorism exception, codified until its repeal at 28 U.S.C. § 1605(a)(7), as part of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. No. 104-132, 110 Stat. 1214. *See Owens*, 864 F.3d at 763. A key feature of the original statutory regime was that only U.S. nationals were eligible to file suit.

*See* 28 U.S.C. § 1605(a)(7) (repealed 2008); *see also Owens*, 864 F.3d at 763. After several courts adopted narrow interpretations of the exception, including that it did not create a cause of action against foreign states, Congress enacted § 1083 of the National Defense Authorization Act for Fiscal Year 2008 (the NDAA), which repealed § 1605(a)(7) and replaced it with the current terrorism exception, 28 U.S.C. § 1605A. Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338-44 (2008) (codified at 28 U.S.C. § 1605A). Among other new provisions, the revised exception explicitly established a federal cause of action for victims of terror attacks and their families to seek damages from state sponsors of terrorism that took part in an attack or materially supported the perpetrators. *See* 28 U.S.C. § 1605A(c); *see also Owens*, 864 F.3d at 765.

Importantly, the new terrorism exception makes causes of action available not only to U.S. nationals, but also to any "claimant" or "victim" who was an employee of the U.S. government or of a U.S. government contractor at the time of a terrorist act and was acting within the scope of his or her employment, or was a member of the armed forces. 28 U.S.C. § 1605A(a)(2)(A)(ii); *see also Owens*, 864 F.3d at 765. The NDAA also replaced the prior statute of limitations for the exception with the following provision:

> An action may be brought or maintained under this section if the action is commenced, or a related action was commenced under section 1605(a)(7) (before the date of the enactment of this section) . . . not later than the latter of— (1) 10 years after April 24, 1996; or (2) 10 years after the date on which the cause of action arose.

28 U.S.C. § 1605A(b).

Another provision, enacted as § 1083(c) of the NDAA, pertaining to the "Application to Pending Cases," also concerns the timeliness of claims arising under the terrorism exception. This provision states:

> (3) Related actions.—If an action arising out of an act or incident has been timely commenced under section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104–208), any other action arising out of the same act or incident may be brought under section 1605A of title 28, United States Code, if the action is commenced not later than the latter of 60 days after— (A) the date of the entry of judgment in the original action; or (B) the date of the enactment of this Act.

122 Stat. at 343 (codified at 28 U.S.C. § 1605A note).

Unaltered by the NDAA is 28 U.S.C. § 1608, which sets out requirements for litigation under any of the FSIA's exceptions. Most of the subsections of § 1608 specify procedures for service on foreign defendants. Section 1608(e), however, concerns default judgments against foreign states. It provides, in relevant part, that

> [n]o judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court.

This provision is similar to Federal Rule of Civil Procedure 55(d), which provides that default judgment may be entered against the United States "only if the claimant establishes a claim or right to relief by evidence that satisfies the court." Fed. R. Civ. P. 55(d); *see Owens*, 864 F.3d at 785.

## B. Terrorist Attacks and Prior Litigation

The enactment of the original terrorism exception in 1996 led to a significant number of actions in U.S. courts by victims of terror attacks and their families. Iran has been a frequent defendant. *See Owens*, 864 F.3d at 777 n.2 (listing several cases); *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 92–103 (D.D.C. 2009) (describing and ruling on motions in twenty cases against Iran). Although Iran has retained counsel and appeared in other matters in U.S. courts, *see, e.g.*, *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175 (D.C. Cir. 2013), it has repeatedly failed to appear to answer FSIA terrorism exception complaints, *see In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d at 43 & n.5.

The four attacks giving rise to the cases at issue here have each been the subject of prior FSIA litigation in which district courts have found that Iran bears partial responsibility for the plaintiffs' injuries. *See, e.g.*, *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 192–99 (D.D.C. 2003), *vacated on other grounds*, 404 F. Supp. 2d 261 (D.D.C. 2005) (1983 Beirut embassy bombing); *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 132–33 (D.D.C 2001) (1984 Beirut embassy bombing); *Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 150–51 (D.D.C. 2011) (1998 Nairobi and Dar es Salaam bombings).

**C. The Cases on Appeal**

The six cases on appeal were filed between 2014 and 2016. The three cases arising out of the 1998 embassy bombings name both Sudan and Iran as defendants, as well as Sudan's Ministry of the Interior and Iran's Ministry of Information and Security. The cases arising out of the Beirut attacks name only Iran and its ministry. The first five cases to be filed were assigned to the same District Court Judge, while the sixth was assigned to a different District Court Judge. As detailed below, the District Courts dismissed each case as untimely, either by granting Sudan's motions to dismiss the claims against it, or by *sua sponte* dismissing the claims against Iran. The plaintiffs now appeal the dismissals of their claims against Iran, arguing that the District Courts erred in raising the statute of limitations *sua sponte* and in dismissing the claims as untimely.

This court appointed counsel to appear as *amicus curiae* ("Appointed Amicus") in support of the District Courts' orders on appeal. We appreciate the outstanding efforts by appointed counsel and the Student Attorneys who appeared with them.

1. Sheikh*,* Kinyua*, and* Chogo *Cases*

The *Sheikh*, *Kinyua*, and *Chogo* cases, which were considered together in the District Court and consolidated on appeal, arise out of the 1998 embassy bombings in Nairobi and Dar es Salaam and name both Sudan and Iran and their ministries as defendants. The *Sheikh* plaintiffs, who filed a complaint in the District Court on December 11, 2014, are four family members and the administrator of the estate of Fahrat Mahmood Sheikh, who was killed in the Nairobi bombing and was employed by either the embassy or a U.S. government contractor operating there. *See* Complaint at 5–6, *Sheikh v.*

13

*Republic of the Sudan*, No. 1:14-cv-02090-JDB (D.D.C. Dec. 11, 2014), *reprinted in* Appendix at 101–02, *Sheikh v. Republic of the Sudan*, No. 18-7060 ("*Sheikh* App."). The complaint asserts claims including wrongful death, loss of consortium, intentional infliction of emotional distress, and civil conspiracy. Complaint at 24–29, *Sheikh*, No. 1:14-cv-02090-JDB (D.D.C. Dec. 11, 2014), *Sheikh* App. 120–25. None of the plaintiffs is a U.S. national.

Plaintiffs in *Kinyua*, who filed their complaint on December 15, 2014, are seven family members of Moses Magothe Kinyua, another Nairobi embassy employee or contractor who was severely injured in the bombing and died in 2012. *See* Complaint at 5–6, *Kinyua v. Republic of the Sudan*, No. 1:14-cv-02118-JDB (D.D.C. Dec. 15, 2014), *reprinted in Sheikh* App. 133–34; *Sheikh* App. 229. Plaintiffs in *Chogo*, who include forty-one employee or contractor victims of the Nairobi attack and ten family members, as well as seven employee or contractor victims of the Dar es Salaam bombing, filed their complaint on June 19, 2015. *See* Complaint at 10–20, *Chogo v. Republic of the Sudan*, No. 1:15-cv-00951-JDB (D.D.C. June 19, 2015), *reprinted in Sheikh* App. 168–78. Both complaints assert claims that are similar to those in the *Sheikh* complaint, though the *Chogo* complaint also includes an assault and battery claim. *See* Complaint at 25–28, *Kinyua*, No. 1:14-cv-02118-JDB (D.D.C. Dec. 15, 2014), *Sheikh* App. 153–56; Complaint at 42–47, *Chogo*, No. 1:15-cv-00951-JDB (D.D.C. June 19, 2015), *Sheikh* App. 200–05. With the exception of one U.S. citizen plaintiff in *Chogo*, the plaintiffs in both cases are either Kenyan or Tanzanian nationals.

Each of the foregoing three complaints alleges that both Sudan and Iran provided material support to the members of al Qaeda who perpetrated the embassy bombings and that the

terrorism exception therefore applies. *See* Complaint at 2–4, *Sheikh*, No. 1:14-cv-02090-JDB (D.D.C. Dec. 11, 2014), *Sheikh* App. 98–100; Complaint at 2–4, *Kinyua*, No. 1:14-cv-02118-JDB (D.D.C. Dec. 15, 2014), *Sheikh* App. 130–32; Complaint at 7–9, *Chogo*, No. 1:15-cv-00951-JDB (D.D.C. June 19, 2015), *Sheikh* App. 165–67. Iran failed to appear in any of the three cases, and Sudan never returned service of the *Chogo* complaint. However, Sudan moved to dismiss the *Sheikh* and *Kinyua* complaints on various grounds, including that the claims were untimely. *See Sheikh v. Republic of the Sudan*, 172 F. Supp. 3d 124, 127 (D.D.C. 2016). The District Court granted the motion and dismissed the *Sheikh* and *Kinyua* plaintiffs' claims as untimely without addressing Sudan's other arguments. *Id.* at 127–32.

The District Court then addressed the plaintiffs' claims against Iran. Rather than rule on motions for default judgment that the plaintiffs had filed, the District Court indicated that the claims against Iran appeared to be untimely. *Id.* at 132. The court acknowledged that it is "normally inappropriate for a federal court to dismiss claims as untimely *sua sponte*," but suggested that both doctrinal and policy considerations might allow for an exception in the FSIA context. *Id.* at 132–33. The District Court then directed all three sets of plaintiffs to file briefs addressing why their claims should not be dismissed as untimely.

After reviewing the parties' briefs on the statute of limitations issue, the District Court issued a consolidated opinion that denied plaintiffs' pending motions for default judgment against Iran and dismissed the claims against Iran with prejudice. *Sheikh v. Republic of the Sudan*, 308 F. Supp. 3d 46, 55 (D.D.C. 2018). In so doing, the District Court acknowledged that a statute of limitations is an affirmative defense that a defendant "normally" forfeits by failing to raise

it. *Id.* at 51. However, the District Court concluded that it had discretion to raise forfeited defenses itself, and that "sua sponte consideration 'might be appropriate in special circumstances,' particularly when an affirmative defense implicates the interests of the judiciary as well as the defendant." *Id.* (quoting *Arizona v. California*, 530 U.S. 392, 412 (2000)).

The District Court thought that "[t]he comity owed to foreign sovereigns, particularly in default scenarios, . . . counsels in favor of raising the timeliness issue here." *Id.* at 53. "Whatever Iran's misdeeds," the court asserted, "it remains a foreign country equal in juridical stature to the United States, and the federal courts must respect 'the independence, the equality, and dignity of the sovereign.'" *Id.* at 52 (quoting *The Schooner Exch. v. McFaddon*, 11 U.S. (7 Cranch) 116, 123 (1812)). Practical comity-related considerations supported acting *sua sponte*, the court explained, including "the reciprocal foreign litigation interests of the United States and a concern for judicial efficiency." *Id.* (quoting *Clodfelter v. Republic of Sudan*, 720 F.3d 199, 209 (4th Cir. 2013)). The court also stated that "particular care must be taken with state-sponsored terrorism claims, since the FSIA strikes a 'careful balance' between comity and accountability." *Id.* at 53 (quoting *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 822 (2018)).

In light of these and other concerns, the District Court concluded that it was appropriate for it to raise *sua sponte* the statute of limitations, deny the motions for default judgment, and dismiss all three sets of claims against Iran as untimely. *Id.* at 55. The *Chogo* plaintiffs were given additional time to obtain return of service from Sudan, *id.* at 55–56, but they elected to dismiss their Sudan claims instead, *see Sheikh* App. 49–50.

Following the District Court's ruling, the *Kinyua* plaintiffs filed a motion for post-judgment relief under Federal Rules of

Civil Procedure 59(e) and 60(b), seeking an opportunity to explain that they did not file their complaint earlier because they had thought they were parties to an earlier suit by other members of their family. *See Sheikh* App. 217–25. The District Court denied the motion. *Kinyua v. Republic of the Sudan*, 326 F.R.D. 16, 23 (D.D.C. 2018). The *Kinyua*, *Sheikh*, and *Chogo* plaintiffs now appeal the dismissal of the claims against Iran. They have not sought review of the decision dismissing the Sudan claims.

### 2. Maalouf *and* Salazar *Cases*

The *Maalouf* and *Salazar* cases, consolidated for appeal, arise out of the 1984 and 1983 Beirut attacks, respectively. The plaintiffs in *Maalouf*, who filed a complaint against Iran on February 17, 2016, and an amended complaint on July 21, 2016, are the brother and the estates of three other family members of Edward Maalouf, a Lebanese national and employee of the U.S. embassy in Beirut who was killed in the 1984 bombing. Amended Complaint at 2–4, *Maalouf v. Islamic Republic of Iran*, No. 1:16-cv-00280-JDB (D.D.C. July 21, 2016), *reprinted in* Appendix at 35–37, *Maalouf v. Islamic Republic of Iran*, No. 18-7052 ("*Maalouf* App."). The plaintiffs are also citizens of Lebanon. Amended Complaint at 3–4, *Maalouf*, No. 1:16-cv-00280-JDB (D.D.C. July 21, 2016), *Maalouf* App. 36–37. Asserting claims that include wrongful death, loss of solatium, and intentional infliction of emotional distress, the amended complaint explains that while other family members of the decedent had filed suit and received a final judgment against Iran in *Estate of Doe v. Islamic Republic of Iran*, 808 F. Supp. 2d 1 (D.D.C. 2011), the living plaintiff in this case, Henri Maalouf, was not in contact with those family members and therefore was unaware of the action. *See* Amended Complaint at 2–3, 6–8, *Maalouf*, No. 1:16-cv-00280-JDB (D.D.C. July 21, 2016), *Maalouf* App. 35–36, 39–41.

The *Salazar* plaintiffs, who filed a complaint asserting claims of wrongful death and intentional infliction of emotional distress against Iran on July 22, 2016, are two sons of Staff Sergeant Mark Salazar, a member of the U.S. military killed in the 1983 embassy bombing. *See* Complaint at 1–3, 5–6, *Salazar v. Islamic Republic of Iran*, No. 1:16-cv-01507-JDB (D.D.C. July 22, 2016), *reprinted in Maalouf* App. 72–74, 76–77. Although the Salazars are American citizens and thus were eligible to file suit before the enactment of § 1605A, they assert that until 2016 they were unaware that they could recover damages from Iran through litigation. *See Maalouf* App. 107–08, 116. They further explain that they did not join an earlier suit concerning their father's death, in which final judgment was entered against Iran on May 12, 2005, *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105 (D.D.C. 2005), because they were not told of the suit by the plaintiff, a woman whom they allege unlawfully married their father in 1979 while he remained married to their mother. *See* Complaint at 1–2, *Salazar*, No. 1:16-cv-01507-JDB (D.D.C. July 22, 2016), *Maalouf* App. 72–73.

Both cases were assigned to the same District Court Judge who presided over the *Sheikh*, *Kinyua*, and *Chogo* cases. On the same day when it dismissed the claims against Sudan in *Sheikh* and *Kinyua*, the District Court issued an order to the *Maalouf* plaintiffs to show cause as to why their claims against Iran should not similarly be dismissed as untimely. *See Maalouf* App. 16–17. Upon review of their response, the District Court issued an order declining to dismiss the claims at that time. *See id.* at 33.

The *Maalouf* plaintiffs then filed and served their amended complaint and moved for entry of a default judgment against Iran. *Id.* at 46–54. The *Salazar* plaintiffs, who filed their

complaint after the show-cause order in *Maalouf*, also filed a motion for default judgment. *Id.* at 83–92. Despite its earlier decision not to dismiss *Maalouf* on timeliness grounds, the District Court denied the motions for default judgment and dismissed both *Maalouf* and *Salazar* in a consolidated opinion largely identical in structure, reasoning, and language to the opinion dismissing *Sheikh*, *Kinyua*, and *Chogo*, which was issued the same day. *Maalouf v. Islamic Republic of Iran*, 306 F. Supp. 3d 203, 213 (D.D.C. 2018). The plaintiffs now appeal.

3. Bathiard *Case*

Finally, plaintiffs in *Bathiard* are the widow, children, and estate of Cesar Bathiard, a Lebanese national and employee of the U.S. embassy in Beirut who was killed in the 1983 bombing. Complaint at 2–3, *Bathiard v. Islamic Republic of Iran*, No. 1:16-cv-01549-CRC (D.D.C. Aug. 1, 2016), *reprinted in* Appendix at 7–8, *Bathiard v. Islamic Republic of Iran*, No. 18-7122 ("*Bathiard* App."). Their complaint, filed on August 1, 2016, and assigned to a different District Court Judge than the five other cases at issue, names Iran and its Ministry of Information and Security as defendants and asserts claims including wrongful death, survival, and loss of solatium. Complaint at 6–9, *Bathiard*, No. 1:16-cv-01549-CRC (D.D.C. Aug. 1, 2016), *Bathiard* App. 11–14.

When the plaintiffs moved for entry of a default judgment against Iran, which once again failed to appear, the District Court directed them to file supplemental briefing addressing whether the action was timely. *See Bathiard v. Islamic Republic of Iran*, 317 F. Supp. 3d 134, 137 (D.D.C. 2018). After receiving the briefing, the District Court adopted the reasoning from the *Sheikh* and *Maalouf* opinions on the timeliness provisions of the terrorism exception and courts' discretion to raise timeliness *sua sponte*, found that the

complaint was untimely, denied the motion for default judgment, and dismissed the case. *See id.* at 138–44. The plaintiffs appeal.

## II. ANALYSIS

### A. Standard of Review

Whether courts have discretion to invoke a statute of limitations *sua sponte* is a question of law and is therefore reviewed *de novo*. *See Patchak v. Jewell*, 828 F.3d 995, 1001 (D.C. Cir. 2016); *see also Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 (4th Cir. 2006) (identifying *de novo* review as appropriate for this question).

### B. Discussion

The only question that we must reach is whether a federal court has discretion to *sua sponte* invoke the terrorism exception's statute of limitations on behalf of defendants who have not entered an appearance or otherwise sought to respond to complaints against them. After reviewing the applicable principles governing the forfeiture of affirmative defenses, and the Supreme Court's instructive jurisprudence on the narrow set of situations in which a court may raise affirmative defenses on its own motion, we conclude that the District Courts erred in taking *sua sponte* action in the cases presented.

#### 1. *Forfeiture of Affirmative Defenses*

We start with fundamental principles governing affirmative defenses, including statutes of limitations. As the Supreme Court has explained, "[o]rdinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto." *Day v.*

*McDonough*, 547 U.S. 198, 202 (2006). This rule derives from Federal Rule of Civil Procedure 8(c), which directs that, "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations." Fed. R. Civ. P. 8(c)(1); *see Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 343 (D.C. Cir. 1997); *see also Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998) (clarifying that an affirmative defense may also be raised in a pre-answer motion under Rule 12(b) "when the facts that give rise to the defense are clear from the face of the complaint"). Although the Rules do not explicitly prescribe the consequences of failing to timely raise a defense, *see Harris*, 126 F.3d at 343, the Supreme Court has instructed that "[a]n affirmative defense, once forfeited, is 'exclu[ded] from the case,'" *Wood v. Milyard*, 566 U.S. 463, 470 (2012) (alteration in original) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1278 (3d ed. 2004)).

We pause here to note the distinction between forfeiture and waiver, terms which "though often used interchangeably by jurists and litigants . . . are not synonymous." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 n.1 (2017). "[F]orfeiture is the failure to make the timely assertion of a right[;] waiver is the 'intentional relinquishment or abandonment of a known right.'" *Id.* (alterations in original) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). We have clarified that "[f]ailure to plead an affirmative defense under Rule 8(c) constitutes failure to make a timely assertion of the defense." *Harris*, 126 F.3d at 343 n.2. While a party may "intelligently choose to waive a statute of limitations defense," *Day*, 547 U.S. at 210 n.11, "[t]he failure to plead need not be intentional for the party to lose its right to raise the defense," *Harris*, 126 F.3d at 343 n.2.

Some statutes of limitations, of course, are jurisdictional. "When that is so, a litigant's failure to comply with the [time] bar deprives a court of all authority to hear a case." *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1631 (2015). Because "[s]ubject-matter jurisdiction can never be waived or forfeited," courts are obligated to raise a *jurisdictional* statute of limitations *sua sponte*, even if "the parties have disclaimed or have not presented" the issue. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Recognizing the "harsh consequences" that a jurisdictional statute of limitations can impose on plaintiffs, however, the Court has established a clear statement rule of statutory interpretation: For a court to conclude that a statute of limitations is indeed jurisdictional, "traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." *Kwai Fun Wong*, 135 S. Ct. at 1632. As a result, most statutes of limitations are not jurisdictional. *See id.*; *see also Musacchio v. United States*, 136 S. Ct. 709, 716–17 (2016).

In *Owens v. Republic of Sudan*, we applied this searching mode of review to examine 28 U.S.C. § 1605A(b), the FSIA terrorism exception's statute of limitations. *See* 864 F.3d at 801–02. Following the Supreme Court's directives, "[w]e look[ed] for the Congress's intent in 'the text, context, and relevant historical treatment'" of the statute. *Id.* at 801 (quoting *Musacchio*, 136 S. Ct. at 717). After finding nothing in the provision's text "refer[ring] to the 'court's power' to hear a case," *id.* at 802 (quoting *Kwai Fun Wong*, 135 S. Ct. at 1633), and "see[ing] 'no authority suggesting the Congress intended courts to read [§ 1605A(b)] any more narrowly than its terms suggest,'" *id.* at 804 (second alteration in original) (quoting *Simon v. Republic of Iraq*, 529 F.3d 1187, 1196 (D.C. Cir. 2008)), we concluded that § 1605A(b) is not jurisdictional, rejecting the contrary argument by Sudan, *id.*

At issue in *Owens* were eight separate default judgments against Sudan in suits arising from the 1998 embassy bombings. After some of the judgments had been entered, Sudan retained counsel and appeared in the District Court to assert various defenses in motions to vacate, including that three of the suits were untimely. *See id.* at 768. The District Court denied the motions to vacate. *Id.* In its appeal, Sudan argued that the terrorism exception's statute of limitations is jurisdictional, a claim we rejected. *See id.* at 804. We further concluded that, because it had failed to timely raise a statute of limitations defense in the three allegedly untimely suits, Sudan had forfeited that defense. *See id.*; *see also id.* at 801 (citing *Harris*, 126 F.3d at 343). That determination was simply an application of the basic principles articulated above: When a party fails to raise an affirmative defense in responding to a pleading, as Sudan did by defaulting, the defense is forfeited. The same reasoning applies to Iran's absence in the cases now before us.

Iran has failed to enter an appearance or submit a filing at any stage of these cases, let alone timely raise the terrorism exception's statute of limitations. We therefore conclude that it has forfeited the defense. We disagree with assertions and insinuations by appellants and amici supporting them that Iran has *waived* rather than *forfeited* a statute of limitations defense by engaging in a purportedly willful default. Appellants and amici contend that because Iran participates in other litigation in the United States, it has made a deliberate choice in not appearing and asserting any affirmative defenses here. But whatever Iran's decisions with respect to other litigation, we agree with the Appointed Amicus that Iran's complete absence here deprives us of any record or basis upon which to reliably determine that it has intentionally relinquished or abandoned a defense.

We are puzzled, however, by the District Court's statement in *Sheikh* that, in cases of default, "the affirmative defense at issue has not actually been waived, and the normal adversarial model upon which the concept of affirmative defenses is based has broken down." 308 F. Supp. 3d at 52. The court offered this statement to justify its departure from the general rule that, with respect to affirmative defenses, if a defendant fails to "raise the issue early on . . . the issue is forfeited." *Id.* at 51 (citing *Day*, 547 U.S. at 202). We agree that Iran has not "waived" any affirmative defenses. But we reject the District Court's suggestion that Iran's failure to raise the statute of limitations defense did not result in a forfeiture. This suggestion finds no support in the law or in the record of the cases before us.

### 2. Sua Sponte *Action on Affirmative Defenses*

Having found that Iran forfeited a statute of limitations defense in each of these cases by failing to assert it in response to the pleadings in the District Court, the issue we must address is whether, and under what circumstances, a court may nonetheless raise a forfeited affirmative defense on behalf of an absent defendant. Specifically, does the District Court have authority to raise *sua sponte* the FSIA terrorism exception's statute of limitations when it has been forfeited by a defendant who is entirely absent from the proceedings? We conclude that the answer is no.

It is well established that a statute of limitations, like other affirmative defenses, generally may not be invoked by the court on its own motion. *See, e.g.*, *United States v. Mitchell*, 518 F.3d 740, 748 (10th Cir. 2008) (noting that "all circuits to consider this issue have held so explicitly" and collecting cases). A strong justification for this rule is what courts have long identified as the "primar[y]" purpose of nonjurisdictional

statutes of limitations: "to protect defendants against stale or unduly delayed claims." *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008). As Justice Marshall explained in more detail some decades ago, "[s]tatutes of limitations are designed to insure fairness to defendants by preventing the revival of stale claims in which the defense is hampered by lost evidence, faded memories, and disappearing witnesses, and to avoid unfair surprise." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 473 (1975) (Marshall, J., concurring in part and dissenting in part). When a defendant is entirely absent from the litigation and has forfeited its timeliness defense, however, little if any purpose for a statute of limitations remains.

The purpose of a nonjurisdictional statute of limitations is not to shield courts from challenges that may arise in adjudicating cases in which motions for default judgment have been filed. Regardless of the difficulties such cases can present, courts are constrained by the principle of party presentation, which is "basic to our adversary system." *Wood*, 566 U.S. at 472. Under that principle, "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008); *see also Keepseagle v. Perdue*, 856 F.3d 1039, 1052–55 (D.C. Cir. 2017). "[A]s a general rule, '[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.'" *Greenlaw*, 554 U.S. at 244 (second alteration in original) (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment)).

The Supreme Court has cautioned that freely permitting departures from this foundational norm and allowing courts to

*sua sponte* raise affirmative defenses as a matter of course would "erod[e] the principle of party presentation so basic to our system of adjudication." *Arizona v. California*, 530 U.S. 392, 413 (2000). The Court has approved the *sua sponte* consideration of forfeited, nonjurisdictional affirmative defenses in a small number of narrow, carefully defined contexts. However, these cabined and rare exceptions to both the party presentation principle and the rules governing forfeiture of affirmative defenses – which otherwise foreclose *sua sponte* action – share a common, defining feature. In each of the cases in which the Court has sanctioned *sua sponte* action by a court to raise a forfeited affirmative defense, the Court has made clear that the circumstances of a case must squarely implicate the institutional interests of the judiciary for such action to be permissible. And in none of these situations was the defendant on whose behalf the court acted entirely absent from the litigation.

Review of the decisions establishing these principles reveals both their narrowness and the common feature that explains the findings made by the Court. We begin with *Day v. McDonough*. In addition to discussing the principles concerning affirmative defenses noted above, the Court in *Day* considered whether a District Court had properly dismissed as untimely a state prisoner's federal habeas corpus petition, even though the respondent state had both answered the petition without raising a statute of limitations defense and had conceded the petition's timeliness. 547 U.S. at 201–04. Finding that the concession was due to the state's inadvertent miscalculation of the filing period, the Court concluded that in these circumstances, the District Court "had discretion to correct the State's error and, accordingly, to dismiss the petition as untimely under AEDPA's one-year limitation," despite the state's forfeiture of the defense. *Id.* at 202. Although it would be "an abuse of discretion to override a State's

deliberate waiver of a limitations defense," the Court clarified, *id.*, "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition," *id.* at 209.

The basis of the Court's judgment in *Day* was its recognition that the AEDPA statute of limitations and "other threshold barriers" facing habeas petitioners "implicat[e] values beyond the concerns of the parties." *Id.* at 205 (alteration in original) (quoting *Acosta v. Artuz*, 221 F.3d 117, 123 (2d Cir. 2000)). Quoting and adopting the reasoning of the Second Circuit's decision in *Acosta*, the Court explained that "[t]he AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time." *Id.* at 205–06 (quoting *Acosta*, 221 F.3d at 123). In other words, the interests of the judiciary that were specially implicated in the context at issue justified departure from the foundational party presentation and forfeiture principles that otherwise would apply and bar *sua sponte* action.

In *Wood v. Milyard*, the Court considered whether *Day*'s holding extends to courts of appeals. In doing so, the Court added further clarity to the rationale underlying its conclusions in *Day* and a predecessor case, *Granberry v. Greer*, 481 U.S. 129 (1987), both of which the Court cited as having "establishe[d] that a court may consider a statute of limitations or other threshold bar the State failed to raise in answering a habeas petition." *Wood*, 566 U.S. at 466. In *Granberry*, the Court explained, it had "recognized a modest exception to the rule that a federal court will not consider a forfeited affirmative defense," there that the habeas petitioner had not exhausted his state remedies. *Wood*, 566 U.S. at 470. The basis for the

outcome in *Granberry* was the Court's determination that "[t]he exhaustion doctrine . . . is founded on concerns broader than those of the parties; in particular, the doctrine fosters respectful, harmonious relations between the state and federal judiciaries." *Id.* at 471. "With that comity interest in mind," the Court concluded that "federal appellate courts have discretion, in 'exceptional cases,' to consider a nonexhaustion argument 'inadverten[tly]' overlooked by the State in the District Court." *Id.* (alteration in original) (quoting *Granberry*, 481 U.S. at 132, 134).

Turning then to *Day*, the Court in *Wood* explained that "[a]ffording federal courts leeway to consider a forfeited timeliness defense was appropriate [in that case] . . . because AEDPA's statute of limitations, like the exhaustion doctrine, 'implicat[es] values beyond the concerns of the parties,'" namely the values that the Second Circuit had identified in *Acosta*. *Id.* at 472 (third alteration in original) (quoting *Day*, 547 U.S. at 205). The Court then reached the question before it, and declared that "[c]onsistent with *Granberry* and *Day*, [it would] decline to adopt an absolute rule barring a court of appeals from raising, on its own motion, a forfeited timeliness defense." *Id.* at 473. The Court recognized that "[t]he *institutional interests* served by AEDPA's statute of limitations are also present when a habeas case moves to the court of appeals, a point *Granberry* recognized with respect to a nonexhaustion defense." *Id.* (emphasis added). The court "accordingly" held that, in the circumstances indicated, "courts of appeals, like district courts, have the authority—though not the obligation—to raise a forfeited timeliness defense on their own initiative." *Id.*

The Supreme Court's analysis in *Wood* thus confirms that the prohibition against *sua sponte* invocation of forfeited affirmative defenses is subject to very narrow exceptions that

may exist when certain institutional interests of the judiciary are implicated and both parties are present in the litigation.

The Court's decision in *Arizona v. California* is consistent with the cases addressing *sua sponte* action in the habeas context. In *Arizona*, the Court stated that it "might be appropriate in special circumstances" for a court to raise *res judicata* defenses on its own motion. 530 U.S. at 412. "[I]f a court is on notice that it has previously decided the issue presented," the Court explained, "[it] may dismiss the action *sua sponte*, even though the defense has not been raised." *Id.* (quoting *United States v. Sioux Nation*, 448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting)). The justification that the Court offered was that institutional judicial interests are involved in "the policies underlying res judicata," which is "not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Id.* (quoting *Sioux Nation*, 448 U.S. at 432 (Rehnquist, J., dissenting)). The contrast with statutes of limitations, which exist "primarily to protect defendants against stale or unduly delayed claims," *John R. Sand & Gravel Co.*, 552 U.S. at 133, is plain.

In all of these decisions, moreover, the defendant was present and participated in the litigation. *See, e.g.*, *Day*, 547 U.S. at 208 (noting that the state respondent belatedly pressed the statute of limitations defense); *Granberry*, 481 U.S. at 130 (noting that the state respondent "for the first time interposed the [exhaustion] defense" on appeal). As a result, before raising the defense *sua sponte*, the court knew that its action was not inconsistent with how the defendant preferred to litigate the matter. After all, the defense is for the defendant to choose to assert (or not) in the first instance. And, as we have already noted, it would be an abuse of discretion for a court to override a defendant's deliberate waiver of a defense. *See Wood*, 566

U.S. at 472–73; *Day*, 547 U.S. at 210 n.11. When a defendant is entirely absent from the proceedings, however, the court cannot reliably assess whether raising the defense *sua sponte* is consistent with how the defendant might choose to litigate the matter. *Cf. Day*, 547 U.S. at 210 ("Of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions."). This is not to say that whenever a forfeited affirmative defense implicates the interests of the judiciary as well as the defendant, the court *must* raise it *sua sponte* if the defendant is present and participates in the litigation. *See id.* at 209; *Wood*, 566 U.S. at 473. All we mean to say is that when the institutional interests of the judiciary are implicated, the defendant's presence matters.

In sum, it is clear that federal courts may depart from the party presentation principle and rules of forfeiture only in distinct and narrow circumstances in which the judiciary's own interests are implicated and the forfeiting party is present in the litigation. We conclude that no such authority exists for a federal court to raise the FSIA terrorism exception's statute of limitations on behalf of an entirely absent defendant. Unlike in the AEDPA context or in the case of a *res judicata* defense, no institutional interests of the judiciary are implicated when a § 1605A claim against an absent defendant proceeds to a default judgment, regardless of who the defendant is or how much time has passed since the terrorist act giving rise to the action took place. We find no merit in the District Courts' conclusions to the contrary or in the Appointed Amicus' arguments in support of the District Courts' rulings.

To begin, the District Courts were mistaken to raise international comity concerns as a justification for acting *sua sponte*. The Supreme Court has held clearly and repeatedly that with the FSIA, Congress established "a comprehensive set of legal standards governing claims of immunity in every civil

action against a foreign state or its political subdivisions, agencies or instrumentalities." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488 (1983). And that "comprehensive framework," *Republic of Austria v. Altmann*, 541 U.S. 677, 699 (2004), including the terrorism exception at § 1605A, strikes a "careful balance between respecting the immunity historically afforded to foreign sovereigns and holding them accountable, in certain circumstances, for their actions," *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 822 (2018).

In other words, as the *Maalouf* and *Bathiard* appellants correctly observe, Congress has already determined the degree of care that courts should show for the interests of foreign sovereigns. Particularly given the Constitution's exclusive assignment of responsibility for international relations to the political branches, *Chi. & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948), there is no room for courts to engage in discretionary, comity-based interest-balancing to decide "whether and when to exercise judicial power over foreign states," *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 140 (2014); *see also* Brief of Professor Stephen I. Vladeck as *Amicus Curiae* Supporting Plaintiffs-Appellants and Urging Reversal at 11–13, *Maalouf v. Islamic Republic of Iran*, No. 18-7052 (Aug. 7, 2018). The purpose of the FSIA was to put an end to that method of decisionmaking on questions of foreign sovereign immunity. *See NML Capital*, 573 U.S. at 141–42; *see also Simon v. Republic of Hungary*, 911 F.3d 1172, 1180–81 (D.C. Cir. 2018).

We are unmoved by the Appointed Amicus's argument that foreign nations' treatment in U.S. courts may impact "the reciprocal foreign litigation interests of the United States when it is sued in any foreign court." Brief for Court-Appointed Amicus Curiae in Support of the District Courts' Orders in No. 18-7052, et al., No. 18-7060, et al., and No. 18-7122 at 22–23,

*Maalouf v. Islamic Republic of Iran*, No. 18-7052 (Dec. 19, 2018) ("Appointed Amicus Br."). This is a concern for the political branches, not the judiciary. As the *Sheikh* appellants note, the Supreme Court has been clear in its FSIA jurisprudence that it is not for the courts "to consider the worrisome international-relations consequences" of adjudicating actions under the FSIA. *NML Capital*, 573 U.S. at 146 (cautioning that any such "apprehensions are better directed to that branch of government with authority to amend [the FSIA]").

In enacting the FSIA, Congress directed the courts to respect the sovereignty of foreign nations who respond when sued and assert timely, valid defenses. However, Congress also made it clear that default judgments may issue in actions arising under the terrorism exception. *See* 28 U.S.C. § 1608(e). It is not the responsibility of the courts to act *sua sponte* to raise affirmative defenses on behalf of defendants who do not appear to defend actions against them.

We disagree with the District Courts and the Appointed Amicus that 28 U.S.C. § 1608(e) provides justification for courts to invoke forfeited affirmative defenses on behalf of absent § 1605A defendants. As we explained in *Owens*, § 1608(e), which prevents entry of default judgments against foreign sovereigns unless the "claimant establishes his claim or right to relief by evidence satisfactory to the court," concerns "the quantum and quality of evidence" that an FSIA plaintiff must offer to demonstrate the merits of her claims before the court may issue a default judgment in her favor. 864 F.3d at 785 (quoting *Alameda v. Sec'y of Health, Educ. & Welfare*, 622 F.2d 1044, 1048 (1st Cir. 1980)). The provision "leaves it to the court to determine precisely how much and what kinds of evidence the plaintiff must provide." *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1047 (D.C. Cir.

2014). It imposes no obligation on plaintiffs to rebut a hypothetical statute of limitations defense, which, as we have explained, is the defendant's responsibility to raise or risk forfeiting. Moreover, an issue regarding a nonjurisdictional statute of limitations has no connection to the quantum or quality of the evidence supporting a plaintiff's "claim or right to relief." 28 U.S.C. § 1608(e). Indeed, as a general matter, a plaintiff whose claims are perhaps untimely but otherwise meritorious is not barred from obtaining a judgment in her favor if a defendant fails to assert the applicable statute of limitations. Why? Because a *forfeited* affirmative defense cannot affect the court's consideration of the merits of a claim.

Nor are there any institutional interests of the judiciary implicated by the obligations that § 1608(e) places on district courts. While the statute directs district courts to perform a screening function to evaluate the merits of a case before issuing a default judgment, this certainly does not justify the *sua sponte* invocation of a statute of limitations defense. An argument that institutional interests are implicated merely because § 1608(e) requires the district courts to assess the merits of a claim before granting default judgment rings hollow. Such a conclusion would permit the "institutional interest" exception to completely swallow the party presentation principle and rules of forfeiture. In addition, given the complexity of the relevant statute of limitations provisions, 28 U.S.C. § 1605A(b) and § 1083(c)(3) of the NDAA, it is far from clear that resolving claims on limitations grounds is easier than assessing the merits. Furthermore, in assessing the merits of a claim under §1608(e), the courts are granted broad discretion to determine what degree and kind of evidence is satisfactory. *See Han Kim*, 774 F.3d at 1047; *Owens*, 864 F.3d at 785. So the burden imposed on district courts is moderated. Moreover, case law shows that District Courts in this circuit routinely perform their § 1608(e) duties in terrorism exception

cases with great effectiveness, even in cases concerning attacks that took place overseas decades ago. *See, e.g.*, *Akins v. Islamic Republic of Iran*, 332 F. Supp. 3d 1 (D.D.C. 2018); *Worley v. Islamic Republic of Iran*, 75 F. Supp. 3d 311 (D.D.C. 2014); *Estate of Doe v. Islamic Republic of Iran*, 808 F. Supp. 2d 1 (D.D.C. 2011).

Furthermore, as noted in *Owens*, § 1608(e) "mirrors a provision in Federal Rule of Civil Procedure 55(d) governing default judgments against the U.S. Government." 864 F.3d at 785. Neither the District Courts nor the Appointed Amicus suggest that Rule 55(d) creates institutional interests justifying *sua sponte* action on affirmative defenses, and we see no reason why the Rule's statutory counterpart for foreign sovereign defendants would either. The Appointed Amicus attempts to draw a distinction by arguing that § 1608(e) imposes a greater responsibility on courts than Rule 55(d) because of the "comity considerations" present in FSIA cases. Appointed Amicus Br. at 30. But, as noted above, international comity concerns do not justify district courts' *sua sponte* actions raising forfeited defenses on behalf of defendants who fail to appear in FSIA cases.

The Appointed Amicus also expresses concern that district courts "bear the brunt of the institutional burden when an untimely claim proceeds to the special procedures for default judgment under Section 1608(e)." *Id.* at 31. We disagree with the assumption that underlies this argument, *i.e.*, that a purportedly untimely § 1605A claim necessarily imposes a greater burden on courts than a timely claim. As we recognized in *Owens*, the significant evidentiary challenge in FSIA terrorism cases with a defaulting defendant is that "firsthand evidence and eyewitness testimony is difficult or impossible to obtain from an absent and likely hostile sovereign." 864 F.3d at 785. This poses a greater problem for plaintiffs who must

gather the evidence than for the courts that must assess it, regardless of how long ago the attack at issue occurred. We fail to see how the expiration of the nonjurisdictional statutory filing period makes any significant difference in a district court's ability to assess the evidence offered by a plaintiff.

Finally, the Appointed Amicus claims that allowing untimely claims to proceed will reduce the payments from the United States Victims of State Sponsored Terrorism Fund, *see* 34 U.S.C. § 20144, made to judgment holders who filed timely complaints. We decline to reach this issue, or to assess the *Maalouf* appellants' contrary arguments, because the Fund was not addressed by the District Courts. We therefore have no record on which to assess the accuracy or import of the parties' claims.

For the reasons indicated above, we hold that the District Courts here lacked authority or discretion to *sua sponte* raise the terrorism exception's statute of limitations to dismiss the six cases before us. As the *Sheikh* appellants cogently observe, approving the approach taken by the District Courts and defended by the Appointed Amicus would be tantamount to giving the courts "*carte blanche* to depart from the principle of party presentation basic to our adversary system," a result that the Supreme Court explicitly warned against in *Wood*. 566 U.S. at 472. We therefore conclude that when an entirely absent defendant has forfeited the FSIA terrorism exception's statute of limitations, the defense is excluded from the case and may not be raised by the court *sua sponte*. No viable institutional interests have been presented in these cases to justify the actions of the District Courts.

3. *Remaining Issues*

Because we find that the District Courts had no authority to act *sua sponte* in these cases, we have no need to reach the parties' arguments concerning the courts' exercise of the discretion that they claimed, the timeliness of the complaints, or the denial of the *Kinyua* plaintiffs' post-judgment motions. We also take no position on the merits of the six cases.

In addition, we need not address whether a district court would lack authority to raise a statute of limitations defense in an FSIA case in which the United States participates in the proceedings and asks the court to rule in favor of an absent foreign sovereign on statute of limitations grounds. Nor do we address whether the correct interpretation of the terrorism exception's timeliness provisions, 28 U.S.C. § 1605A(b) and § 1083(c)(3) of the NDAA, is in fact as straightforward as the District Courts assumed.

## III. CONCLUSION

For the foregoing reasons, we reverse the judgments of the District Courts, vacate the dismissals of the complaints, and remand the cases for further proceedings.

*So ordered.*